**Frank and Arlene WILSON**

v.

**COMMONWEALTH MORTGAGE CORPORATION, Appellant.**

**No. 89–1746.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 26, 1990.

Decided Feb. 9, 1990.

---

Lawrence T. Phelan, Federman & Phelan, Philadelphia, Pa., for appellant.

Michal Fox Mivasair, Community Legal Services, Inc., Philadelphia, Pa., for appellees.

Before SLOVITER, HUTCHINSON, and COWEN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Commonwealth Mortgage Corporation has appealed the order of the district court that Commonwealth's allowed secured claim against debtors Frank and Arlene Wilson was limited to the value of the debtors' home and certain items of personal property, that the remainder of its claim was unsecured, and that Commonwealth's rights as to the unsecured claim could be modified without violating 11 U.S.C. § 1322(b)(2). We will affirm on alternative grounds. We hold (1) that the unsecured portion of Commonwealth's claim may be modified and (2) that Commonwealth's claim was secured by personal property as well as by the debtors' residence and, therefore, the anti-modification provision of section 1322 does not apply.

### I.

The Wilsons financed the purchase of their home in 1983 with a loan from Commonwealth's predecessor, and executed a mortgage agreement covering not only the real estate but also "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises."

On June 27, 1988, the Wilsons filed a petition under Chapter 13 of the Bankruptcy Code. Commonwealth filed a proof of secured claim for $38,176.75, which was the balance the debtors owed Commonwealth. The debtors filed an adversary proceeding seeking to limit Commonwealth's allowed secured claim to the fair market value of the collateral, which was their principal residence. The parties have stipulated that the fair market value of the property securing the lien is $22,000.

The bankruptcy court agreed with the debtors' position and entered an order that limited Commonwealth's allowed secured claim to $22,000 plus the value of the debtors' appliances and furniture as scheduled. Commonwealth appealed to the district court and it affirmed. Commonwealth now appeals to us. We have jurisdiction pursuant to 28 U.S.C. § 158(d). The issue before the court is one of statutory construction and our review is plenary. *See Matter of Roach*, 824 F.2d 1370, 1372 (3d Cir.1987).

## II.

Commonwealth argues that resolution of its appeal requires an examination of the relationship between 11 U.S.C. § 506(a), a generally applicable provision limiting a creditor's secured claim to the value of the collateral, and 11 U.S.C. § 1322(b)(2), a provision applicable only to Chapter 13 covering modification of the rights of holders of secured claims.

Section 506(a), which we have held applies to Chapter 13 proceedings, *see In re Lewis*, 875 F.2d 53, 55 (3d Cir.1989), defines allowed secured and allowed unsecured claims.

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a). The Supreme Court has recently explained that section 506(a) "provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enterprises, Inc.*, — U.S. —, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989).

Chapter 13 of the Bankruptcy Code permits debtors to reorganize their affairs to repay their debts through future income rather than having to resort to a liquidation of their assets. Its purpose " 'is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period' of from three to five years." *Matter of Roach*, 824 F.2d 1370, 1372 (3d Cir.1987) (quoting H.R.Rep. 595, 95th Cong., 1st Sess. 118 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6079).

Section 1322 covers debtors' plans in Chapter 13 proceedings. Subsection (b) thereof lists ten provisions that debtors may, but are not required to, include in their plans. Subsection (b)(2), which is relevant here, provides that the plan may:

> modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2) (emphasis added).

It is Commonwealth's position that section 1322(b)(2) was designed to protect residential mortgagees in Chapter 13 cases and that the express terms of that section prohibit any modification of the mortgagee's rights. Commonwealth construes section 1322(b)(2) as restricting the general provisions of section 506(a) permitting modification. It thus argues that the determination by the district court that the portion of Commonwealth's claim in excess of the value of the collateral is unsecured and can be modified violates the anti-modification provision of section 1322(b)(2).

The bankruptcy court did not reach this issue. Instead, it looked to the mortgage agreement which provided that a security interest was being taken in personal property as well as in the debtors' home and concluded that Commonwealth's claim was not "secured only by a security interest in real property that is the debtor's principal residence," as clearly required by section 1322. Therefore, the bankruptcy court

held that the section's prohibition on modification did not apply.[1]

On appeal, the district court affirmed the bankruptcy court on two grounds. It rejected Commonwealth's argument based on section 1322(b)(2) and held instead that any portion of a claim that is unsecured under section 506(a) may be modified under section 1322(b)(2). It reasoned that "[u]nder the plain meaning of § 1322(b)(2), a creditor's rights may be modified unless the creditor's claim is *both* (1) a secured claim and (2) one secured only by a security interest in real property that is the debtor's principal residence. Neither prerequisite is satisfied here." App. at 25 (emphasis in original). It continued, a "secured claim" for purposes of section 1322(b)(2) "means what 11 U.S.C. § 506(a) says it means: that portion of the claim which does not exceed the value of the collateral." *Id.* Therefore, it concluded that in this case only $22,000 plus the value of the furniture and appliances is "secured" and the remainder may be modified. The district court also agreed with the bankruptcy court that Commonwealth's claim was secured by personal property as well as the debtors' residence, and held that therefore the protection to home mortgagees provided by section 1322 does not apply here.

### III.

■ Bankruptcy and district courts in this circuit are divided over whether section 1322 precludes modification of an undersecured mortgage debt. *Compare In re Harris*, 94 B.R. 832 (D.N.J.1989) (§ 1322 prohibits modification only to extent claim is actually secured); *In re Jablonski*, 88 B.R. 652 (E.D.Pa.1988) (same) *with In re Hynson*, 66 B.R. 246 (Bankr.D.N.J.1986) (claim secured by residence cannot be modified even where the amount of the claim

exceeds the value of the collateral); *Matter of Smith*, 63 B.R. 15 (Bankr.D.N.J.1986) (same). The Ninth Circuit has addressed the issue directly, holding that section 1322(b)(2) does not bar bifurcation of the claim of an undersecured mortgage into secured and unsecured portions under section 506 and that, accordingly, the creditor's rights under the unsecured portion can be modified. *In re Hougland*, 886 F.2d 1182 (9th Cir.1989). *See also 5 Collier on Bankruptcy*, ¶ 1300.73[4] at 1300–148; ¶ 1322.06 at 1322–15 (L. King 15th ed.1989) (hereinafter *Collier*) (claim may be bifurcated and unsecured portion modified).

This court's discussion of the issue in *Gaglia v. First Federal Sav. & Loan Ass'n*, 889 F.2d 1304 (3d Cir.1989), although not the holding of the case, suggested that when called upon to deal with the issue, we would be likely to agree with the Ninth Circuit. In *Gaglia*, we held that the lien avoidance mechanism of section 506(a) was applicable in a Chapter 7 proceeding even when the property was not administered in the bankruptcy proceeding. In response to the creditor's argument that this holding would discourage the use of Chapter 13 because a provision thereof prohibits modification of a claim secured only by the debtor's residence, we stated:

> This limitation, however, operates only against secured claims.... Whether the plan complies with § 1322(b)(2) depends on the extent to which the claim is secured, an issue that is determined by reference to § 506. *See In re Lewis*, 875 F.2d 53, 56 (3d Cir.1989) (in Chapter 13 proceeding, claim secured only by security interest in residence may be voided to extent it is not an allowed secured claim as defined by § 506); *In re Jablonski*, 88

---

**1.** The parties did not stipulate to and no evidence was introduced concerning the existence and value of the Wilsons' furniture, appliances, machinery, and equipment. However, the bankruptcy court assumed that the debtors owned some of these items and that they were not valueless. Although Commonwealth disputes the value of the items, it does not claim that none exist or that they have no value and it has not introduced any evidence to that effect.

This case is therefore distinguishable from the situation in *In re Lewis*, 875 F.2d 53 (3d Cir. 1989), where, although the plan contained a finding that the mortgagee held a claim "secured by an interest in personal property as well as in real property," *id.* at 54, it was conceded that the mortgagee had no security interest in other than the debtor's residence at the time the plan was drawn. *Id.* at 56 n. 1.

B.R. 652, 657 (E.D.Pa.1988); 5 *Collier on Bankruptcy* ¶ 1322.06[1][a] at 1322–15 (L. King 15th ed.1989). The prohibition in § 1322(b)(2) therefore operates against the same portion of the creditor's claim that remains intact even when § 506 is applied in this case [*i.e.* the secured portion].

*In re Gaglia,* 889 F.2d at 1311.

To the extent that the issue remains open, we hold today that section 1322(b)(2) does not preclude the modification of any "unsecured" portion of an undersecured claim. Commonwealth points us to no language of the statute which is inconsistent with such a construction.

In determining the meaning of any statute, the words of the statute are "the primary, and ordinarily the most reliable, source of interpreting" its meaning. *Watt v. Alaska,* 451 U.S. 259, 266 n. 9, 101 S.Ct. 1673, 1678 n. 9, 68 L.Ed.2d 80 (1981) (quoting *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.1945)). Looking to the language of section 1322(b)(2), it provides that with one exception a Chapter 13 plan may modify the rights not only of holders of unsecured claims, but also of holders of secured claims. The exception appears in the "other than" clause, providing for modification of secured claims "other than a claim secured only by a security interest in real property that is the debtor's principal residence."

The statutory construction which some bankruptcy courts have used to support their position that the entire "claim," consisting of both the secured and the unsecured portion of the claim, cannot be modified, *see, e.g., In re Hynson,* 66 B.R. at 252, has been roundly criticized by the Ninth Circuit in *Hougland. See* 886 F.2d at 1184. We agree with the Ninth Circuit's view that because the "other than" phrase is best read to refer to secured claims, the "other than" phrase should be read to limit modification only of that portion of the claim that is secured.

Commonwealth argues that the legislative history of section 1322 supports its position. Unfortunately, our review of the history of the provision does not provide us

with much insight into the critical question here. The legislative process culminating in the enactment of the Bankruptcy Code of 1978 was stimulated by the 1970 creation by Congress of the Commission on the Bankruptcy Laws of the United States. *Collier* App. 2 at vii. In 1973, the Commission issued recommendations and a draft bill. *See* H.R. Doc. No. 137, 93d Cong., 1st Sess., Pts. I and II (1973), *reprinted in Collier* App. 2 at I. The Commission's report noted that the then-current version of Chapter 13 did not cover any claim secured by real property and thus did not allow a debtor to protect his interest in his home by including his home mortgage in a bankruptcy plan. *Id.* at 13. The Commission recommended that debtors be able to include in their plans proposals for paying debts secured by liens on their residences. *Id.* In a discussion of the rights of secured creditors, the Commission also noted that it was not envisioned that a creditor secured by a lien on a debtor's residence "should be entitled to insist that the plan strictly preserve all of the terms of his original contract if the value of his claim against the property of the debtor is preserved. Insofar as there is a deficiency of the collateral to cover the claim of the secured creditor, he may be and should be treated as a member of the class of unsecured creditors." *Id.* at 166.

Legislation to implement the Commission's recommendations was introduced in both houses of Congress. Neither the House or Senate version was entirely consistent with the Commission's recommendation and neither seemed to focus specifically on the problem of undersecured creditors. *See In re Neal,* 10 B.R. 535, 536 (Bankr.S.D.Ohio 1981). The House version of section 1322(b)(2) was more favorable to debtors than was the Commission's version and provided that the plan could modify the rights of holders of secured or unsecured claims. H.R. 8200, 95th Cong., 1st Sess. § 1322(b)(2) (1977), *reprinted in Collier* App. 3 at III, 537. It contained no exceptions for liens on the debtor's residence. Thus, where a creditor holding a lien on a residence was undersecured because the

value of the residence was less than the amount of the lien, the House version would permit modification of both the secured and unsecured portions of the creditor's claim. *See* H.R. No. 595, 95th Cong., 2d Sess. 429, *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5963, 6384.

The Senate version, on the other hand, included an exception for real estate mortgages and provided that the plan may "modify the rights of holders of secured and unsecured claims (other than claims wholly secured by mortgages on real property) or holders of unsecured claims." S. 2266, 95th Cong., 2d Sess. § 1322(b)(2) (1978), *reprinted in Collier* App. 3 at VII, 573. The exception was apparently included to protect the home mortgage industry. *See Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236, 245 & n. 13 (5th Cir.1984) (in banc); Einbinder, *Curing Mortgage Defaults Under Chapter 13 of the Bankruptcy Code,* in 1982 Ann. Surv. of Bankruptcy Law 493, 495.

The final version of section 1322(b)(2) was contained in a House amendment and was characterized by the legislative leaders as a "compromise agreement." 1978 U.S. Code Cong. & Admin.News at 6481, 6550 (Statements of Rep. Edwards and Sen. De-Concini). This final version limited the exception to home mortgages rather than any real estate mortgage, as would have been provided by the Senate version. Presumably, the compromise was between those for the House version who supported unrestricted modification on behalf of Chapter 13 debtors and those for the Senate version which excepted certain real estate mortgages from modification. The slight difference in language in the exclusionary phrase between the Senate's version ("wholly secured") and that ultimately adopted ("secured only") does not appear to have been given any significance. Thus, although it is clear that the anti-modification provision of the Act was inserted on behalf of the home mortgage industry, the fact that the provision itself was a compromise suggests that the residential mortgage providers did not emerge with all the protection they may have sought.

Commonwealth also argues that as a matter of statutory construction, the specific exclusion of section 1322(b) controls the general provisions of section 506(a). This would, in effect, require that we ignore section 506(a) in Chapter 13 proceedings, which is inconsistent with our earlier precedent that holds that section is fully applicable to Chapter 13. *See In re Lewis,* 875 F.2d at 55. On the other hand, construing section 1322(b)(2) to allow bifurcation of secured and unsecured portions of a claim and to allow modification of the unsecured portion makes it consistent with section 506, a section of general applicability. Nor does reading section 1322(b)(2) in this manner leave the section without a *raison d'etre.* Section 1322(b)(2) continues to prevent modification of the rights of holders of a secured claim secured only by a real estate interest in the debtor's home, rights that in the absence of the exclusionary language of the section could be modified under Chapter 13.

For these reasons, we will adopt as well-reasoned the conclusion of the district court that section 1322(b)(2) does not preclude modification of the unsecured portion of an undersecured mortgage debt.

## IV.

As an alternative basis for our decision, we hold that in this case the anti-modification provision of section 1322 does not bar the bankruptcy court's order because the creditor's interest was not secured only by real property as required by the statute. By its express terms, section 1322 prohibits modification of a creditor's rights only when the creditor's claim is "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The mortgage agreement stated that Commonwealth had a security interest in appliances, machinery, furniture and equipment. The bankruptcy court reasoned that section 1322(b)(2) was therefore inapplicable in this case.

Commonwealth argues that the additional security has no "independent value," and seeks to buttress that contention by arguing that if Commonwealth had been at-

tempting to obtain additional security, it would have recorded appropriate financing statements. Commonwealth's arguments are unpersuasive.

In support of its contention that the additional security has no "independent value," Commonwealth relies exclusively on *Matter of Foster*, 61 B.R. 492 (Bankr.N.D.Ind. 1986). There, the Federal Land Bank secured its loan with a first mortgage on the debtors' 162 acre farm and a first lien on the debtors' Federal Land Bank stock. The court found that the "circumstances of the farmer's 'purchase' and 'return' of his stock appear to be a formality without any substantive meaning." *Id.* at 495. Thus, the court's holding that the stock had no independent value and was not additional security which would prevent the application of section 1322 has no bearing on whether Commonwealth's security interest in the Wilsons' personal property had independent value. Appliances, furniture and the other items in which Commonwealth has a security interest are patently items of independent value.

Furthermore, we attach little significance to Commonwealth's failure to file financing statements on the debtors' personalty. Under the Uniform Commercial Code as adopted by Pennsylvania, a security interest in personal property can be created by any security agreement signed by the debtor even if a financing statement covering the collateral has not been filed. 13 Pa. Cons. Stat.Ann. § 9203(a)(1). A mortgage such as the one here which includes furniture, equipment, machinery and appliances in its description of collateral clearly creates a security interest in that personal property. *See In re Bender*, 86 B.R. 809, 814 (Bankr.E.D.Pa.1988); *In re Caster*, 77 B.R. 8, 11–13 (Bankr.E.D.Pa. 1987); *In re Cervantes*, 67 B.R. 816, 818–19 (Bankr.E.D.Pa.1986).

Moreover, Commonwealth's subjective desire to obtain an interest in the property is irrelevant. The language of section 1322(b)(2) is unambiguous. The language of the bankruptcy judge bears repeating: "If Commonwealth wishes otherwise, it should delete such language from its agreements."

Our interpretation of section 1322(b) in light of the language of the mortgage is consistent with the analysis applied by the authors of the respected treatise *Collier on Bankruptcy*. In discussing this issue, the treatise states:

> Creditors sometimes demand real property and personal property to secure the same debt. Even purchase money mortgages often take incidental security interests in appliances, furniture and other personalty. Other creditors may have security interests in other real property, rents, escrow accounts, bank accounts, motor vehicles or insurance proceeds. All such claims may be modified by a chapter 13 plan, and a creditor may not protect its claim from modification by relinquishing its other liens after a bankruptcy is filed.

5 *Collier* ¶ 1322.06 at 1322–14–15 (footnotes omitted). *Accord In re Stiles*, 74 B.R. 708 (Bankr.N.D.Ala.1987) (claim secured by principal residence and life insurance may be modified); *In re Lapp*, 66 B.R. 67 (Bankr.D.Colo.1986) (claim secured by principal residence and irrigation equipment may be modified); *In re Ramirez*, 62 B.R. 668 (Bankr.S.D.Cal.1986) (claim secured by property serving as principal residence and rental property may be modified); *In re Baksa*, 5 B.R. 184 (Bankr.N.D. Ohio 1980) (creditor cannot prevent modification by canceling security interest in automobile and furniture).

Having listed personal property as collateral, Commonwealth has a secured interest in it. It follows that Commonwealth's claim is not one "secured only by a security interest in real property that is the debtors' principal residence," and section 1322's anti-modification provision does not apply. Therefore, Commonwealth's rights in the unsecured portion of its claim may be modified as provided by section 506.

## V.

For the reasons stated above, the order of the district court will be affirmed.