In re Steven Paul HIRSCH, Debtor.

Steven Paul HIRSCH, Plaintiff,

v.

CITICORP MORTGAGE CORP., Defendant.

Bankruptcy No. 93–11372S.
Adv. No. 93–0210S.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 25, 1993.

Jane B. MacElhenney, Schroeder & MacElhenney, Philadelphia, PA, for debtor.

Gary E. McCafferty, Philadelphia, PA, for Citicorp Mortg. Corp.

Edward Sparkman, Philadelphia, PA, standing Chapter 13 Trustee.

### OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION

In *Nobleman v. American Savings Bank,* — U.S. —, —, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993), the Supreme Court held that 11 U.S.C. § 1322(b)(2) prohibits the use of 11 U.S.C. § 506(a) to "strip down" the lien of a mortgagee to the value of the mortgaged real estate where "the lender's claim is secured only by a lien on the debtor's residence." The instant proceeding presents the issue of whether a clause in the parties' mortgage which takes a security interest in, *inter alia,* rents and profits of the mortgaged premises and fixtures located therein at the time of execution of the mortgage or at any time thereafter places the mortgage beyond the scope of 11 U.S.C. § 1322(b)(2). We hold that it does, and that the instant Debtor may

therefore utilize 11 U.S.C. § 506(a) to bifurcate the mortgagee's claim into a secured claim equal to the value of the mortgaged premises and an unsecured claim for the balance, irrespective of the holding in *Nobleman.*

## B. HISTORY OF THE PROCEEDING

On March 9, 1993, STEVEN PAUL HIRSCH ("the Debtor") filed the underlying individual Chapter 13 bankruptcy case. The Plan filed with the petition contemplates payments of $2,300 monthly for 60 months, a sum apparently easily sufficient to pay off the Debtor's alleged total allowed secured claims of $85,000 against his residential real estate located at 4627 Hazel Avenue, Philadelphia, Pennsylvania 19143 ("the Home"). A confirmation hearing has been scheduled on July 29, 1993.

On March 16, 1993, the Debtor filed two adversary proceedings. In these proceedings, he attempted, respectively, to reduce the potential secured claims of CITICORP MORTGAGE, INC. ("Citicorp"), the first mortgagee on the Home, to the $85,000 alleged value of the Home; and avoid entirely any secured claim of the alleged second mortgagees on the Home, James and Mary Bierly (collectively "Bierly"). After two continuances, the trials of these proceedings were listed on June 15, 1993. On that date, the proceeding against Bierly was reported settled. The parties agreed to submit the instant proceeding against Citicorp to the court on a Stipulation of Facts, to be submitted on or before June 22, 1993.

The Stipulation contains the following concise statement of relevant uncontested facts:

Debtor financed the purchase of [the Home] in September 1989 with a loan from [Citicorp]. He is co-mortgagor along with his wife, Alison Hirsch (not a debtor) (hereinafter "co-mortgagor"). Debtor and co-mortgagor executed a note for the principal sum of $92,000 with [sic] covering the real estate together with all the improvements now or hereafter erected on the property and all easements, rights, appurtenances, rents[,] royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property" [sic]. All replacements and additions are also covered by the Security Instrument.

On or about April 3, 1992 judgment in mortgage foreclosure was entered in the Court of Common Pleas of Philadelphia County in the amount of $107,779.03, later reassessed to $122,898.39.

... The parties stipulated that the value of [the Home] is $88,000.

## C. DISCUSSION

The *Nobleman* decision overruled a line of decisions of this court stretching back to *In re Jablonski,* 70 B.R. 381, 385–86 (Bankr.E.D.Pa.1987), *aff'd in part & remanded in part,* 88 B.R. 652 (E.D.Pa. 1988), and ultimately adopted as the law of the Third Circuit in *Sapos v. Provident Institution of Savings in Town of Boston,* 967 F.2d 918, 926 (3rd Cir.1992); and *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 126–28 (3rd Cir.1990), holding that a Chapter 13 debtor's use of 11 U.S.C. § 506(a) to "strip down" mortgagees' liens to the value of the mortgaged premises did not contravene 11 U.S.C. § 1322(b)(2).

However, it is important to emphasize what *Nobleman* did *not* decide. Firstly, the Court did not rely on the reasoning employed in the context of a Chapter 7 case in *Dewsnup v. Timm,* — U.S. —, — – —, 112 S.Ct. 773, 778–79, 116 L.Ed.2d 903 (1992). It did not hold that a "strip down" of a mortgagee's lien was not permissible in a Chapter 13 case. Thus, as was portended in *Sapos, supra,* 967 F.2d at 924–25; and *In re Taras,* 136 B.R. 941, 949–50 (Bankr.E.D.Pa.1992), the Court did not hold that the reasoning of *Dewsnup* applied to a Chapter 13 (or a Chapter 11) case. If the Court had so reasoned, it would have been unnecessary for it to reach the issue of the impact of § 1322(b)(2) upon "lien strip-

ping." However, *Dewsnup* is not even cited in the brief *Nobleman* opinion.

Secondly, the Court did not comment on the issue of whether 11 U.S.C. § 1322(b)(2) was applicable to the mortgage at issue, given the particular security interests taken therein, because the *Nobleman* debtor apparently assumed or conceded that the mortgage in issue was within the scope of § 1322(b)(2). *Cf. First Nat'l Fidelity Corp. v. Perry*, 945 F.2d 61, 62 n. 1 (3rd Cir.1991) (as we indicated in *Taras, supra,* 136 B.R. at 950–52, the breadth of the decision in *Perry* is significantly limited by the court's refusal to consider whether the mortgage in issue was within the scope of § 1322(b)(2)).

The crucial issue in determining whether "lien-stripping" is permissible here is, therefore, whether the parties' mortgage fits within the narrow scope of § 1322(b)(2), which provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> .    .    .    .    .
>
> (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property* that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ... (emphasis added).

■ There is ample authority for the principle that the parties' instant mortgage, in which a security interest in "rents," "profits," present and future "fixtures," and all "replacements and additions" to the Home is taken, is not a claim secured "only by ... real property," and hence is not within the scope of § 1322(b)(2).

For example, in *In re Oglesby*, 150 B.R. 620, 625 (Bankr.E.D.Pa.1993); *Taras, supra,* 136 B.R. at 951; *In re Klein*, 106 B.R. 396, 399–400 (Bankr.E.D.Pa.1989); *In re Ford*, 84 B.R. 40, 42 (Bankr.E.D.Pa.1988); and *In re Caster*, 77 B.R. 8, 11 (Bankr. E.D.Pa.1987), we held that a mortgagee's taking a security interest in "rents, issues, and profits" was sufficient to take a mortgage out of the scope of § 1322(b)(2). In so holding in *Caster, supra,* 77 B.R. at 11, we rejected the argument that this clause was simply boilerplate, pointing out that, simply because language is or may be boilerplate does not render it meaningless. In *Taras, supra,* 136 B.R. at 951, we noted that the issue of whether a mortgagee has taken a security interest in rents is an important issue in other contexts and thus presumably a clause so providing is very significant. *Compare In re SeSide Co.,* 152 B.R. 878, 884–85 (E.D.Pa.1993) (clause granting a rent assignment to a mortgagee creates, in and of itself, a security interest in rents), *with In re Wynnewood House Associates,* 121 B.R. 716, 723 (Bankr. E.D.Pa.1990); and *In re TM Carlton House Partners, Ltd.,* 91 B.R. 349, 353–55 (Bankr.E.D.Pa.1988) (other acts by a mortgagee to accomplish perfection are required to create a valid security interest in rents). In *Klein, supra,* 106 B.R. at 399–400; and *Ford, supra,* 84 B.R. at 42, we held that security clauses in which certain items (lighting equipment and machinery) were excluded by crossing them out were nevertheless sufficient, even as modified, to take the mortgages in question out of the scope of § 1322(b)(2).

Also, taking a security interest in present and future fixtures and all "replacements and additions" thereto has been held by us to be sufficient to take a mortgage out of the scope of § 1322(b)(2). *See Klein, supra,* 106 B.R. at 400; and *Ford, supra,* 84 B.R. at 42.

■ These holdings of this court have been supported by portions of the decisions in *Sapos, supra,* 967 F.2d at 925–26; and *Wilson, supra,* 895 F.2d at 128–29, which are untouched by the decision in *Nobleman. See Taras, supra,* 136 B.R. at 949–50 (this court remains bound by Third Circuit precedent in the absence of subsequent contrary Supreme Court authority directly on point). In *Wilson*, a mortgagee's security interest in appliances, furniture, and

other items was held sufficient to take its claim out of the scope of § 1322(b)(2). 895 F.2d at 129. In *Sapos*, a mortgagee's security interest in "wall-to-wall carpeting, rents and profits," 967 F.2d at 925, was held sufficient to take its claim out of the scope of § 1322(b)(2). Wall-to-wall carpeting appears to be a "fixture,"[1] and therefore *Sapos* holds that similar, but narrower, security interests than those taken by Citicorp here are sufficient to take a mortgage out of the scope of § 1322(b)(2). This holding controls the disposition of this proceeding. *Accord, In re Kelly,* 150 B.R. 121, 122 (Bankr.M.D.Pa.1992). *Contra In re Davis,* 989 F.2d 208, 212–13 (6th Cir. 1993).

## D. CONCLUSION

We therefore enter the following Order, permitting the Debtor to make use of § 506(a) to "strip down" Citicorp's mortgage. However, in accordance with our holding in *Taras,* 136 B.R. at 950, we will condition this determination on the Debtor's achieving confirmation of a plan which will pay Citicorp's allowed secured claim in full, pursuant to 11 U.S.C. § 1325(a)(5)(B), and his ultimately obtaining a discharge in this case.

---

1. Fixtures include items which are " 'physically connected with real estate [which are] ... removable without destroying or materially injuring the chattels,' which become fixtures 'depending upon the intention of the parties at the time of annexation....' " *In re Wax,* 1992 WL 122899, slip op. at *4 (Bankr.E.D.Pa.1992), quoting *In re Farrier,* 61 B.R. 950, 953 (Bankr. W.D.Pa.1986). *See also In re Hess,* 61 B.R. 247, 249–50 (Bankr.W.D.Pa.1986); *Clayton v. Lienhard,* 312 Pa. 433, 436–37, 167 A. 321, 322 (1933); and *O'Donnell v. Schneeweis,* 73 D. & C.2d 400, 403–08 (Chester Co. C.P. 1975). It appears likely to us that wall-to-wall carpeting, as the court specifically held in *O'Donnell, supra,* 73 D. & C.2d at 403–04, would ordinarily be included within the definition of "fixtures."