In re Paul GIBBONS, f/k/a Gibbons Construction, and Robin Gibbons, f/k/a Next Generation Living, Debtors.

Paul GIBBONS and Robin Gibbons, Plaintiffs,

v.

OPECHEE DISTRIBUTORS, INC., Bank of New Hampshire, successor to The Suncook Bank, Farmington National Bank, First N.H. Bank, N.A., and Sears, Roebuck & Co., Defendants.

Bankruptcy No. 91–13761–JEY.
Adv. No. 92–1147.

United States Bankruptcy Court,
D. New Hampshire.

Dec. 28, 1993.

Robert M. Koch, Concord, NH, for debtors.

Alvin Nix, Laconia, NH, for Opechee Distributors, Inc.

Richard R. Peppe, Pembroke, NH, for Suncook Bank.

Carl W. Potvin, Rochester, NH, for Farmington Nat. Bank.

Lawrence Sumski, Amherst, NH, Trustee.

### Memorandum Opinion

JAMES E. YACOS, Chief Judge.

This adversary proceeding came on for hearing before the Court on December 17, 1993 on cross-motions for summary judgment filed by the debtors and Opechee Distributors, Inc., a secured creditor with an attachment on the property in question.

■ These cross-motions raise the question of whether, when debtors have bifurcated a claim into an allowed secured claim and an allowed unsecured claim, under Section 506(a) of the Bankruptcy Code in a Chapter 13 proceeding, the provision of 11 U.S.C.

§ 506(d) voiding any lien attributable to the portion of the debt that is allowed as an unsecured claim will have the effect in chapter 13 of voiding the lien in that respect.

On August 25, 1993, this Court ruled in this case that under pertinent caselaw a debtor in chapter 13 can bifurcate secured claims into allowed secured claims and allowed unsecured claims pursuant to Section 506 of the Bankruptcy Code. *See In re Gibbons* (*Gibbons v. Opechee Distributors, Inc., et al.*), 164 B.R. 717 (Bkrtcy.D.N.H. 1993). The Court noted that in *Nobleman v. American Savings Bank*, 508 U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the United States Supreme Court ruled that, in chapter 13 proceedings, the proviso in 11 U.S.C. § 1322(b)(2) prohibits bifurcation with regard to liens *secured only by the debtors' primary residence*, and that *this specific proviso* overrides the more general provisions of 11 U.S.C. § 506 that would otherwise permit such bifurcation. *Id.* at ——, 113 S.Ct. at 2109. Indeed, as I noted in that Order and as other courts have noted, the Supreme Court in *Nobleman* was dealing only with the proviso situation and would not even have had to reach that question had it believed that as a general matter the provisions of 11 U.S.C. § 506 for allowance and bifurcation did not apply in Chapter 13. *Id.* at —— ——, 113 S.Ct. at 2110–11.

The narrow further issue put forward in the present matter, taking into account my prior ruling in August of 1993, is whether the debtors in chapter 13, while being able to bifurcate a secured claim into an allowed secured portion and an allowed unsecured portion, nevertheless cannot totally void the lien as to the unsecured portion because that would be more than a "modifying" of the lien as permitted under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1322(b)(2).

Opechee Distributors, Inc., a creditor of these debtors and defendant herein (hereinafter referred to as "Opechee"), contends that although debtors have been allowed to bifurcate Opechee's secured claim into al-

lowed secured and allowed unsecured portions, the debtors still can not void Opechee's lien to the extent that it is unsecured. Opechee maintains that the word "modify" in 11 U.S.C. § 1322(b)(2) is more specific than the word "void" in 11 U.S.C. § 506(d), that voiding a lien is not within the ambit of the Court's modifying powers, and that the Court can therefore only modify defendant's lien into secured and unsecured portions but must leave the lien intact and unavoided.

■ In my judgment it would make no sense to hold that the debtors can bifurcate in chapter 13, yet still face a lien that would "spring up" again after the chapter 13 plan is completed, because the lien was not able to be avoided, as suggested by Opechee's argument in this matter.[1] I agree with Opechee to the extent that any voiding of the lien could not occur until the debtors have fully performed their plan, and that any order providing for the avoidance of a lien would have to be contingent upon full performance of the plan, but it would make no sense in my judgment to say that the debtors could have the benefit of the bifurcation, just during the period of the plan, but have to face the same lien and the additional amount as a liened item thereafter even though debtors fully perform their plan.

At least one bankruptcy court ruling subsequent to the *Nobleman* decision has determined that a mortgage, which is not secured solely by a security interest in the debtor's principal residence, can have the lien stripped down to the value of the collateral involved. *See In re Hirsch*, 155 B.R. 688 (Bankr.E.D.Pa.1993). I believe the reasoning of that case is persuasive and adopt it. I realize that the *Hirsch* case does not focus on this additional contention raised by the defendant-creditor Opechee herein—which contention is rather narrow as noted above— that while a debtor can bifurcate a debtor cannot avoid the lien. In my judgment that is the necessary implication of the *Hirsch* decision and really the necessary implication of my own August 1993 decision.

---

1. Students of early English property law will recall that "springing uses" were a not uncommon phenomenon in those days. This Court has not encountered one recently however and declines to resurrect a near cousin to that device in 1993.

I should note that one can read *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) in many different ways as a matter of statutory interpretation. However, I think the important factor underlying the United States Supreme Court's decision in that case is a refusal to permit a massive "sea change" in bankruptcy law (even in a recodification of the bankruptcy laws) if there is not *some indication* either in the statutory language or the statutory construct, or in specific legislative history, that such a massive change in preexisting bankruptcy law was intended by Congress. As many commentators have indicated, the statutory analysis and reasoning in *Dewsnup* leaves something to be desired in terms of prior principles of statutory interpretation.[2]

■ My view is that you can only understand the Supreme Court's decisions in this context by first determining whether the result argued for from the 1978 Code is or is not a massive change in pre-existing bankruptcy law and/or is or is not explainable by changes in other provisions of the bankruptcy laws from the recodification. Then, if the answer is that there is no particular explanation, either in legislative history or in the construct of the entire recodified laws, the Court will construe the language of the statute in such fashion so as to avoid a truly massive change in policy that it believes Congress did not intend.

As I explained in my earlier decision in this matter in August, *see In re Gibbons* (*Gibbons v. Opechee Distributors, Inc., et al.*), 164 B.R. 717, 718 (Bkrtcy.D.N.H.1993), there was a 100 years or so of history of no lien stripping in chapter 7, and I think that fact more than anything else explains the Supreme Court's reasoning in *Dewsnup.* I do believe the Court was right—that Congress didn't realize that their legislation (the 1978 Code) arguably was going to allow lien stripping in straight bankruptcy. Had that been the subject of committee hearings, the furor that would have been raised by various interest groups would have been astronomical. I think the Supreme Court was correct that there was no policy judgment made that lien stripping would be permissible in chapter 7 proceedings.

With regard to chapter 13, however, the Code does make an explicit and significant change from the prior bankruptcy laws. Chapter 13 under the current Code now provides for modification of the rights of secured creditors. The prior Chapter XIII under the Bankruptcy Act did not permit a plan to so provide. *See Bankruptcy Act,* Chapter XIII, Article II, Sec. 606(1), (2), and *Bankruptcy Act,* Chapter XIII, Article VIII, Sec. 646(2) (1976). I think this difference to some extent explains *Nobleman,* although *Nobleman* also had the basis that there is a more specific provision in chapter 13 that, under general statutory interpretation principles, overrides a more general provision in other portions of the Bankruptcy Code.

Accordingly, notwithstanding some logical problems in putting all these decisions together, which I freely admit, I believe the Supreme Court would rule that lien stripping is permissible in chapter 13 if the prohibiting proviso which is the subject of the *Nobleman* decision is not applicable. Therefore, plaintiffs' Motion for Summary Judgment (ADV Court Doc. No. 27) will be granted; defendant Opechee Distributors, Inc.'s Motion for

---

**2.** The Supreme Court in prior cases has often said that, in a general recodification of the laws on a particular subject, the Court will not expect to see an explanation in the legislative history of every substantive change in the recodification and will not give any particular weight to the absence of legislative history with respect to a particular change. *See U.S. v. Ron Pair,* 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) ("Initially, it is worth recalling that Congress worked on the formulation of the Code for nearly a decade.... In such a substantial overhaul of the system, it is not appropriate or realistic to expect Congress to have explained with particularity each step it took. Rather, as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute.") I have also made reference to the plain meaning of the statutory language. *See e.g. In re PSNH,* 108 B.R. 854, 874–880 (Bankr.D.N.H. 1989) (discussion of statutory construction and the plain meaning rule in the context of whether a provision of federal bankruptcy law preempts state law). ¨In *Dewsnup* the Supreme Court used the silence of Congress as a factor in reaching their result.

Summary Judgment (ADV Court Doc. No. 28) will be denied.

A separate Order and Final Judgment [3] in accordance with this Opinion shall be entered contemporaneously herewith.

---

**3.** By pleading entitled "Waiver of Objection to Plaintiff's Motion for Summary Judgment", defendant Farmington National Bank has indicated its acquiescence to the entry of judgment on behalf of plaintiffs/debtors herein. (See ADV Court Doc. No. 31). The remaining defendants in the above-captioned heading are equally subject to the Final Judgment entered in favor of plaintiffs/debtors, by virtue of the necessary implication of my August 25, 1993 Order, my ruling this date, and the failure of said defendants to respond to the briefing schedule set forth in the Pretrial Order dated August 25, 1993, which failure justifies in itself an entry of default judgment against said defendants.