In re John M. LUTZ, Debtor.

MIAMI VALLEY BANK, Movant,

v.

John M. LUTZ and Gary J. Gaertner, Trustee, Respondents.

John M. LUTZ, Movant,

v.

NO RESPONDENT.

John M. LUTZ, Movant,

v.

MIAMI VALLEY BANK and Gary J. Gaertner, Trustee, Respondents.

John M. LUTZ, Movant,

v.

MIAMI VALLEY BANK and Gary J. Gaertner, Trustee, Respondents.

Bankruptcy No. 91–00705E.
Motion Nos. BSK–2, RLD–5 and RLD–7.

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 26, 1994.

Robert L. Damewood, Farrell, PA, for debtor.

B. Scott Kern, Guy C. Fustine, Erie, PA, for Miami Valley Bank.

*Opinion*

WARREN W. BENTZ, Chief Judge.

*Introduction*

All of the above matters revolve around a dispute between John M. Lutz ("Debtor") and Miami Valley Bank ("Bank") over the amount and status of the Bank's claim.

The parties agree that the threshold issue is whether the Bank's first mortgage lien is "a claim secured only by a security interest in real property that is the debtor's principal residence" within the meaning of 11 U.S.C. § 1322(b)(2). The Bank asserts that it holds such a claim and, accordingly, that its claim is not subject to modification. The Debtor, on the other hand, asserts that the Bank holds a security interest in more than just the Debtor's principal residence and, therefore, the Debtor is entitled to utilize 11 U.S.C. § 506 to bifurcate the Bank's claim into a secured claim in the amount of the value of the Debtor's residence and an unsecured claim for the balance.

All of the matters have been held in abeyance pending resolution of this issue.

The issue has been briefed and the parties agree that the issue is ripe for decision.

*Facts*

The parties have provided the Court with the relevant facts by way of stipulation. From the STIPULATION OF FACTS, we derive the following.

The Debtor filed a voluntary Petition under Chapter 13 of the Bankruptcy Code on September 3, 1991. The Debtor is the owner of residential real property located at 446 Frank Street, Sharon, Pennsylvania (the "Property").

On October 23, 1985, the Debtor executed a Mortgage Note· and Mortgage ("Note and Mortgage") to obtain a Veterans Administration ("VA") guaranteed residential first mortgage loan in the amount of $15,000 on the Property. The Bank presently holds the Note and Mortgage by virtue of valid assignments.

The Mortgage (VA Form 28–4226) provides the Bank a security interest in the Debtor's residence,

> Together with all and singular the buildings, improvements and fixtures on said premises, as well as all additions or improvements now or hereafter made to said premises, streets, alleys, passages, ways, waters, water courses, rights, liberties, privileges, hereditaments, and appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof, and in addition thereto the following described household appliances, which are, and shall be deemed to be fixtures and a part of the realty, and are a portion of the security for the indebtedness herein mentioned, namely, [no personal property itemized] provided, however that the Mortgagor shall be entitled to collect and retain the said rents, issues and profits until default hereunder.

Stipulation of Facts, ¶ 10.

The Debtor defaulted on the Note in October, 1990. The Bank obtained a default judgment in mortgage foreclosure on July 12, 1991 in the amount of $17,318.75.

The Bank presently asserts a claim of approximately $25,000 while the Debtor asserts that the fair market value of the Property is $14,000.

### Discussion

■ The Debtor seeks to utilize 11 U.S.C. § 506[1] to "cram down" or "strip down" the amount of the Bank's security interest in the Property to the fair market value of the Property. However, where the lender's claim is secured only by a lien on the debtor's principal residence, 11 U.S.C. § 1322(b)(2) prohibits such a modification. 11 U.S.C. § 1322(b)(2); *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

In the instant case, the Debtor asserts that the language contained in the Mortgage which grants the Bank a security interest in "improvements and fixtures," "additions or improvements," and "rents, issues and profits" provides the Bank with security in addition to the Debtor's principal residence and is sufficient to bring the Bank's claim outside of the protection of § 1322(b). The Bank asserts that "these items are legally considered to be incident to the property interest in real estate, part of the Debtor's realty, and not 'additional' personal property."

Prior to the *Nobelman* decision, Court of Appeals for the Third Circuit had determined that a Chapter 13 debtor with an undersecured debt could resort to § 506 to bifurcate the debt into secured and unsecured portions. *Sapos v. Provident Institution of Savings In Town of Boston,* 967 F.2d 918 (3d Cir.1992); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3d Cir.1990). The Third Circuit relied on two alternative rationales. First, that bifurcation of the secured lender's mortgage claim into secured and unsecured portions is not a modification of the creditor's rights under § 1322(b). *Id.* Second, that when a creditor takes a security interest in personalty in addition to realty, the creditor puts its claim outside the antimodification provisions of § 1322(b)(2). *Id.* *Nobelman* overruled the first rationale, but did not address the second. *In re Hammond,* 156 B.R. 943 (E.D.Pa.1993); *In re Hirsch,* 155 B.R. 688 (Bankr.E.D.Pa.1993).

In *Wilson,* "[t]he mortgage agreement stated that [the secured creditor] had a security interest in appliances, machinery, furniture and equipment." *Wilson,* 895 F.2d at 128. The *Wilson* Court concluded "[h]aving listed personal property as collateral, [the

---

1. 11 U.S.C. § 506 provides in pertinent part: (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

secured creditor] has a secured interest in it. It follows that [the secured creditor's] claim is not one 'secured only by a security interest in real property that is the debtor's principal residence,' and section 1322's anti-modification provision does not apply."

In *Sapos*, the secured lender had a security interest in the real estate, rents and profits, "together with '. . . the following described household appliances, which are, and shall be deemed to be fixtures and a part of the realty, and are a portion of the security for the indebtedness herein mentioned, namely, wall to wall carpeting . . .'." *Sapos*, 967 F.2d at 922. The *Sapos* Court, without discussion, states that the language of the form providing a security interest in wall to wall carpeting, rents, and profits is an "attempt to reach collateral that is personalty and not realty." *Id.* at 925. The Court went on to hold that "a Chapter 13 debtor with an undersecured debt, whether that debt be secured solely by residential real estate or by realty and personalty, may resort to bifurcation under section 506(a)." *Id.* at 928.

After the *Nobelman* decision, both the Bankruptcy Court and the District Court in the Eastern District of Pennsylvania have had the opportunity to address this question under similar, but not identical facts. In *In re Laws*, 163 B.R. 449 (E.D.Pa.1994), the Court determined that a mortgage which was secured by the debtor's residence and "any and all appliances, machinery, furniture and equipment . . ." did not qualify for protection from modification under § 1322(b)(2) because it was not secured only by the debtor's principal residence.

In *In re Hammond*, 156 B.R. 943 (E.D.Pa. 1993), the Court found that a mortgage secured by the debtor's residence and "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises" removes the lender's claim from the ambit of the anti-modification clause of § 1322(b)(2).

In *In re Oglesby*, 161 B.R. 917 (Bankr. E.D.Pa.1993), the Court held that a security interest "in the oven, dishwasher, and fan vent in the [residence], as well as rents, issues, and profits therefrom" was sufficient

to take the mortgage outside the scope of § 1322(b)(2).

In *In re Hirsch*, 155 B.R. 688 (Bankr. E.D.Pa.1993), the Court held that a mortgage which provided for a security interest in "rents," "profits," present and future "fixtures," and all "replacements and additions" is not a mortgage secured "only by . . . real property, and hence is not within the scope of § 1322(b)(2)." *Hirsch* at 690. The Court cited the Third Circuit's *Sapos* decision in support of its holding:

> In *Sapos*, a mortgagee's security interest in "wall to wall carpeting, rents and profits," 967 F.2d at 925, was held sufficient to take its claim out of the scope of § 1322(b)(2). Wall to wall carpeting appears to be a "fixture," and therefore *Sapos* holds that similar, but narrower, security interests than those taken by Citicorp here are sufficient to take a mortgage out of the scope of § 1322(b)(2).

*Hirsch*, 155 B.R. at 691.

We have difficulty with the *Hirsch* Court's interpretation of *Sapos*. While wall to wall carpeting "appears to be a fixture," the *Sapos* Court did not consider it as such. *Sapos* followed the teachings of *Wilson*, 895 F.2d 123 (3d Cir.1990), which determined that when a creditor takes a security interest in personalty in addition to realty, the creditor puts the claim outside the anti-modification provision of § 1322(b)(2). The *Sapos* Court considered that a security interest in wall to wall carpeting, rents and profits was an "attempt to reach collateral that is personalty and not realty." *Sapos*, 967 F.2d at 925. *Sapos* and *Wilson*, therefore, stand for the proposition that where a creditor is secured by personal property, in addition to the principal residence, § 1322(b)(2) does not protect the secured creditor from having its rights modified.

That brings us to the question in this case, which is whether the Mortgage provides the Bank with anything more than an interest in the Debtor's real property.

We note initially that the Mortgage does not provide a security interest in household appliances. It does provide a security interest in "buildings," "hereditaments," "appurte-

nances," "improvements and fixtures," "reversions and remainders," and "rents, issues, and profits." Do these items take the Bank outside the protections of § 1322(b)(2)?

The Court of Appeals for the Sixth Circuit has addressed similar language. *In re Davis*, 989 F.2d 208 (6th Cir.1993). In *Davis*, the lender had an interest in "the Hereditaments and Appurtenances, rents, royalties, profits, and fixtures thereto appertaining." *Id.* at 212. The Court held that "the referenced phrase refers to benefits which are merely incidental to an interest in real property, and [we] find that· [the lender's] interest in these incidental benefits does not constitute additional security for purposes of § 1322(b)(2)." *Id.* The Sixth Circuit distinguished *Davis* from the numerous decisions of the Bankruptcy Court for the Eastern District of Pennsylvania and from the Third Circuit's *Wilson* case on the basis that in those cases, the security interest encompassed goods or property other than real estate fixtures or incidental interests, while the language in *Davis* "does not extend [the lender's] security interest beyond items which are inextricably bound to the real property itself as part of the possessory bundle of rights." *Id.* at 212–13.

In a similar case, *In re Spano*, 161 B.R. 880, (Bankr.D.Conn.1993), the mortgagee had as security, "the lands, premises and property ... with the buildings and all other improvements thereon ... together with all and singular the privileges and appurtenances thereto belonging or appertaining, and the rents, issues and profits thereof ... and all fixtures now or hereafter attached ..." *Id.* The Court stated that "the fact that the ... mortgage may have used many words to describe component parts of the real property when the words 'real property' may have sufficed, does not mean that the [lender] has a security interest in something other than the 'real property that is the debtor's principal residence'." *Id.* The Court then looked to state law and determined that under Connecticut law, each item of the lender's collateral was included within the phrase "real property" and that the lender's security interest in rents and fixtures did not eliminate the lender's protection from modification un-

der § 1322(b)(2). *Id.; see also In re Pruitte*, 157 B.R. 662 (Bankr.E.D.Mo.1993) (improvements, easements, rights, appurtenances, rents, royalties, mineral rights and profits, water rights, and fixtures does not constitute additional security); *In re Jackson*, 136 B.R. 797 (Bankr.N.D.Ill.1992) (security interest in fixtures and insurance proceeds does not constitute additional security, but under Illinois law, where a mortgagee is not entitled to the rents and profits derived from the mortgaged property unless such rents have been expressly pledged in the mortgage documents, a provision pledging rents derived from the debtor's residence created security interest in property other than the debtor's principal residence.)

■ We therefore look to Pennsylvania law to determine whether "improvements and fixtures," "additions or improvements," and "rents, issues, and profits" constitute a security interest in something other than the real estate which is the Debtor's principal residence. *See Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (property interests are created and defined by state law).

■ Under Pennsylvania law, "a mortgage of land carries with it any structure erected thereon and all fixtures attached thereto even though not expressly mentioned ..." *First Nat. Bank of Mount Carmel v. Reichneder*, 371 Pa. 463, 91 A.2d 277 (1952).

■ A fixture has been defined by Pennsylvania courts "as an article of personal property which by reason of physical annexation to a building becomes in legal contemplation a part of the real estate." *Catanzaro v. Wasco Products, Inc.*, 339 Pa.Super. 481, 489 A.2d 262 (1985). Thus, in Pennsylvania, all mortgages automatically apply to fixtures, improvements and additions which become part of the real estate as opposed to addition-· al personal property.

The next question is whether "rents, issues, and profits" constitute additional security. In *Marine Nat'l. Bank v. Northwest Pennsylvania Bank & Trust Co.*, 308 Pa.Super. 154, 454 A.2d 67 (1982), the Court addressed the nature of the right to accrued

and unaccrued rents in a situation which involved a judgment lien. The Court stated:

The right to accrued rents is a personal property right. [citation omitted] The right to unaccrued rents is, however, an 'incorporeal hereditament' and part of the reversionary real property . . . at the time the judgment lien attached, the unaccrued rents were as much real property subject to that lien as any other real property of the judgment debtor.

308 Pa.Super. at 159–160, 454 A.2d at 70.

■ "After default, with or without the benefit of a rent assignment provision, a mortgagee may enter into possession of the mortgaged property and receive rents from tenants." *In re SeSide Co., Ltd.,* 152 B.R. 878, 883 (E.D.Pa,1993). As pointed out in *Fogarty v. Shamokin & Mount Carmel Transit Co.,* 367 Pa. 447, 80 A.2d 727 (1951), the only difference between a mortgage containing an assignment of rents provision and a mortgage without such a provision, is the manner in which the mortgagee is entitled to take possession of the property to collect rents or profits:

It must first be noted that the mortgage on which the appellants rely does not contain the clause usually found in mortgages by which the mortgagor expressly conveys not only the mortgaged premises but the 'rents, issues and profits thereof.' When such a clause is included, it operates as an assignment to the mortgagee of future rents issuing out of the property, which assignment becomes effective however only when, upon default, the mortgagee notifies the tenant of the default and his (the mortgagee's) demand. *Bulger v. Wilderman and Pleet,* 1930, 101 Pa.Super. 168: approved by this court in *Randal v. Jersey Mortgage Investment Co.,* 1932, 306 Pa. 1, 5, 158 A. 865. Thus, a subsequent assignee of rents or an attaching creditor may claim only rents that accrue prior to the date of the demand served on the tenant by the mortgagee: *Miner's Savings Bank v. Thomas,* 1940, 140 Pa.Super. 5, 12 A.2d 810. From the date that the mortgagee's assignment is thus made effective and as to rents thereafter accruing, the claim of the attaching creditor or subsequent assignee must give way to prior assignment to the mortgagee.

However, the right of a mortgagee in absence of such an express conveyance or assignment of rents, issues, and profits depends upon the application of entirely different principles. In such case, as pointed out by the late President Judge Keller, a learned authority on real estate law, if the premises are leased before the date of the mortgage, then the mortgage binds in reality the reversion of the lessor (mortgagor) and its lien necessarily covers every incident of that reversion including the future rents due to the mortgagor, which, upon default and notice to the tenant, the tenant must pay or else be subjected to distraint by the mortgagee, no attornment being required because of the English statute 4 Anne, Ch. 16, Sec. 9, in force in Pennsylvania, 3 Binney App. p. 625, all of which was clearly and interestingly set forth by Judge Keller in *Peoples–Pittsburgh Trust Co. v. Henshaw,* 1940, 141 Pa.Super. 585, 588, 15 A.2d 711. Where, however, as here, the lease was executed after the date of the mortgage and there has been no conveyance of the rents, issues, and profits, then the mortgagee can proceed only by abrogating the lease which may be done (1) by an action of ejectment pursuant to his superior right or (2) by foreclosure of the mortgage. By either means the mortgagee trustee could have entered into a new lease with the tenant either as mortgagee in possession or as owner after the foreclosure and so effectually secure the rent.

■ The right of a mortgagee to receive rents, even in the presence of an assignment of rents clause, is grounded in possession of the real property, and not a personal property right. As stated in *SeSide:*

The right of a mortgagee to receive rents, even when the mortgage contains an assignment provision, is grounded on "possession" of the underlying realty. A mortgagee can obtain "possession" of realty and consequently obtain a present right to receive rents in two ways: (1) by entering into "actual possession" of the real estate through foreclosure or by acting as a mort-

gagee in possession; or (2) by taking "constructive possession" of the realty by serving demand notices on the mortgagor's tenants. See *Fogarty,* 80 A.2d at 728–29; *Colbassani* [*v. Society of Christopher Columbus,* 159 Pa.Super. 414], 48 A.2d [106] at 107 [ (1946) ]; *Peoples–Pittsburgh,* 15 A.2d at 714; *Bulger,* 101 Pa.Super. at 176–77.

152 B.R. at 883.

■ The assignment of rents clause ("rents, issues, and profits") grants the Bank the right to take constructive possession of the premises and collect the rents in the event the Debtor leases the premises and defaults on the Note and Mortgage.[2] If no assignment of rents clause exists, the mortgagee can take actual possession of the premises and collect the rents. The Debtor does not direct us to any case in which a court, upon consideration of Pennsylvania law, has found that the "rents, issues, and profits" language, without more, is sufficient to remove a mortgagee from the protection of § 1322(b)(2). The right to take constructive possession cannot be considered a personal property right or security in addition to the lien against the real estate.

The language at issue contained in the Mortgage does not extend the Bank's security interest beyond items which are "inextricably bound to the debtor's residence as part of the possessory bundle of rights." *See Davis supra.* The Bank's secured claim is "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2).

Accordingly, the Debtor's motion for valuation of secured claim will be refused. An appropriate order will be entered.

---

**2.** The Debtor's residence was not leased to any third party at the date the Mortgage was signed or at any time thereafter.