In re Sandra L. TALLO, Debtor.

**THIRD NATIONAL BANK & TRUST COMPANY OF SCRANTON,**
**Movant,**

v.

**Sandra L. TALLO, Respondent.**

**In re Sandra L. TALLO, Plaintiff,**

v.

**THIRD NATIONAL BANK & TRUST COMPANY OF SCRANTON and Charles DeHart, III, Esq., Trustee, Defendants.**

**Bankruptcy No. 5–93–00607.**
**Adv. No. 5–93–0119.**

United States Bankruptcy Court,
M.D. Pennsylvania.

June 28, 1994.

---

Brian E. Manning, Wilkes–Barre, PA, for debtor.

Daniel Penetar, Scranton, PA, for Third Nat. Bank.

Charles DeHart, III, Chapter 13 Trustee, Hummelstown, PA.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The parties, Sandra L. Tallo, (hereinafter "Debtor"), and Third National Bank & Trust Company of Scranton, (hereinafter "Bank"), have pending before this court Debtor's Motion pursuant to 11 U.S.C. § 506 seeking strip down of the Bank's second mortgage and the Bank's Motion for Relief from the Automatic Stay.

The parties have agreed that our application of the Supreme Court case of *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) will be dispositive of the pending motions.

The Bank maintains that the second mortgage of Third National Bank cannot be "stripped down" because *Nobelman* prohibits a strip down when a lien of a mortgage is "secured only by a lien on the debtor's residence".

The property described in the mortgage was known as 115 Reeves Street, Dunmore, Pennsylvania and is the residence of the Debtor. Notwithstanding the identification of the real estate in question, the Bank's mortgage contains the following language:

"TOGETHER with all the buildings and improvements thereon and additions and alterations thereto, including all alleys, passageways, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging or appertaining, and the reversions, remainders, rents, issues, and profits, herein called the Mortgaged Premises."

The Bank maintains that under Pennsylvania law, rents and profits are automatically included in the mortgage itself by its mere execution. Presumably, that language is mere surplusage; it was not necessary to be repeated in the body of the mortgage.

The Debtor maintains that such language in the mortgage instruments evidences an intent to convey more than just the residential property and, therefore, subjects this mortgage to modification.

Section 1322(b)(2) of the Bankruptcy Code spells out the "antimodification provision" which has been the subject matter of numerous cases. That provision reads as follows:

§ 1322. **Contents of plan.**

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, ...

The first question we raise is whether the terms "rents, issues, and profits" are mere terms of surplusage. Restated, do those terms somehow increase the rights the Bank has beyond a mere interest in the real estate of the Debtor?

We find that they do. In *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34 (3rd Cir.1993), Judge Weis wrote that "The right to rents often depends on whether the mortgage predates the leases and contains an express conveyance of the rents.... In the case at hand, because the mortgages

included assignments of rents, the bank's rights do not depend on whether the leases preceded the mortgages or followed them." [Citations omitted.] *Id.* at page 38.

As a reading of *Commerce Bank* will more fully indicate then, the rent assignment terms included in the language of the mortgage before us allows the Bank to claim title to those rents from leases that may have been executed post-mortgage.

Having determined that specific rights have been increased by the inclusion of this language in the mortgage, the question then arises whether this is sufficient to distinguish *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

We are fortunate to have the specific issue determined by the Third Circuit in the recent case of *In re Hammond,* 27 F.3d 52 (3rd Cir.1994). In that case, the Court held that a mortgage which creates security interests in property identified as "appliances, machinery, furniture and equipment ... of any nature whatsoever" in addition to a lien on the mortgagor's principal residence takes a mortgage beyond the protection of the antimodification clause of section 1322(b)(2) of the Bankruptcy Code and permits bifurcation of the mortgage into secured and unsecured components under section 506(a). *Id.* at page 55.

Much as here, the Bank argued that the additional security provided for in its mortgage was meaningless standard language that gave it no additional security "as a practical matter". The court disposes of that argument by repeating the language of the lower court. "Their recourse, if they wish to avoid modification, is to forgo the additional security". *Id.* at page 54.

We therefore conclude that the second mortgage of the Third National Bank & Trust Company of Scranton is subject to strip down.

The Debtor is given fifteen (15) days to amend her Chapter 13 Plan in a manner consistent with our findings.

The Bank's Motion for Relief from Stay will be scheduled for final hearing to consider the further rights of the parties.