**In re Emil J. HARASCHAK, Debtor.**

**PEOPLES FIRST NATIONAL BANK and Trust Company, Hazleton, PA, now by merger, First Eastern Bank, N.A., Movant,**

v.

**Emil J. HARASCHAK, Respondent.**

Bankruptcy No. 5–93–01579.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

June 29, 1994.

**326**

David J. Harris, Wilkes–Barre, PA, for debtor.

Gordon L. Bigelow, Conyngham, PA, for movant.

Charles DeHart, III, Chapter 13 Trustee, Hummelstown, PA.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Peoples First National Bank and Trust Company, Hazleton, PA, now by merger, First Eastern Bank, N.A. (hereinafter "Bank"), has filed an objection to the First Amended Chapter 13 Plan of Emil J. Haraschak (hereinafter "Debtor"), alleging three (3) grounds as follows: (1) Section 1322(b)(2) of the Bankruptcy Code (antimodification provision) prevents the Bank's secured claim from being stripped down; (2) the mortgage obligation of the Debtor has matured under its own terms and been reduced to a pre-petition judgment rendering it not subject to modification; and (3) the Plan failed to provide for full payment of the Bank's claim with interest.

The mortgage in question had a five (5) year term with a balloon payment at the sixtieth (60th) month. It was entered into on March 16, 1988 and, accordingly, matured on February 16, 1993.

On July 6, 1993, judgment was entered in favor of the Bank and a Writ of Execution was issued on August 24, 1993.

*Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) stands for the proposition that the antimodification provision of 11 U.S.C. § 1322(b)(2) prevents what has been known as the "strip down" of an undersecured mortgage to partially secured status and partially unsecured status so that a debtor could provide for full payment of the secured debt and some modified treatment of the unsecured debt. The operative words of Section 1322(b)(2) which prevents modification is that the obligation owing the secured creditor must be a "... claim secured only by a security interest in real property that is the debtor's principal residence ...". Accordingly, if there is some other collateral besides the debtor's principal residence, then the holder of the secured claim could have their rights modified.

The Debtor alleges that the real estate identified in the mortgage in favor of the Bank included both the residence and the Debtor's business establishment known as "E.J.'s Pub" and the Debtor's spouse's design studio business premises. *First National Fidelity Corp. v. Perry,* 945 F.2d 61 (3rd Cir.1991) supports the proposition that "Even though the contractual terms between the parties in this case have merged into the entry of judgment of foreclosure, the security interest or lien against the property continues to be the product of a consensual arrangement between debtor and lender". *Id.* at page 64.

The circuit court agreed with the Court of Appeals for the Ninth Circuit in *In re Seidel,* 752 F.2d 1382 (9th Cir.1985) indicating that the "... deferral of a presently due obli-

gation for a period of three to five years constitutes a 'modification' of that obligation within the plain meaning of that word." *First National Fidelity Corp. v. Perry, supra,* at page 65.

The court in *First National Fidelity Corp., supra,* therefore concluded that "If § 1322(b)(2) is to provide home mortgage lenders with any meaningful protection, it must prohibit Chapter 13 plans that modify their rights by allowing the debtor to pay a foreclosure judgment over the three to five years of the plan." *Id.* at page 67.

■ The obvious conclusion then is that if the mortgage is protected under Section 1322(b)(2) from being modified by a Chapter 13 Plan, then any judgment entered pursuant to that mortgage is also protected from modification.

We must then analyze the underlying mortgage debt of the Debtor to determine whether it should enjoy the protections afforded by Section 1322(b)(2) of the Bankruptcy Code.

■ The court notes that the mortgage executed by the Debtor includes the following language:

"**TOGETHER** with all and singular the Buildings and Improvements on said premises, as well as all alterations, additions or improvements now or hereafter made to said premises and any and all fixtures, appliances and equipment of any nature whatsoever now or hereafter installed in or upon said premises, Street, Alleys, Passages, Ways, Waters, Water Courses, Rights, Liberties, Privileges, Hereditaments and Appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the Reversions and Remainders, Rents, Issues and Profits thereof; . . ."

Our circuit has recently had the opportunity to examine essentially the same language in the recent case of *In re Hammond,* 27 F.3d 52 (3rd Cir.1994).

That court indicated that the additional security interest represented by inferences to "appliances, machinery, furniture and equipment" was sufficient to exclude the spe-

cific mortgage in front of it from the protection of 11 U.S.C. § 1322(b)(2) since the given mortgage was secured not only by the residence but by these other items.

Under principles of *stare decisis* then, this court must conclude that the original mortgage could have been "modified" and, therefore, the judgment entered pursuant to that mortgage could also be modified (as could any other secured claim not within the protections of 11 U.S.C. § 1322(b)(2)).

We lastly turn to the final issue raised by the Bank challenging the interest rate tendered by the Debtor in his proposed Plan.

The Debtor has indicated an intention to strip down the Bank's mortgage debt of Eighty–Four Thousand Five Hundred Fifty–Two Hundred and 15/100 Dollars ($84,552.15) to the value of the property i.e., Seventy–Nine Thousand Dollars ($79,000.00), as a secured claim with the balance being treated as unsecured. The Debtor then anticipates paying the Bank the full amount of its secured claim or Seventy–Nine Thousand Dollars ($79,000.00) over the life of the Plan at an interest rate of six percent (6%) which is the legal rate accorded judgments filed in Pennsylvania. 42 Pa.S.A. § 8101, 41 Pa.S.A. § 202.

■ The court acknowledges that on foreclosure, an underlying mortgage is merged with the foreclosure judgment. *In re Stendardo,* 991 F.2d 1089 (3rd Cir.1993). Accordingly, all contract rights are extinguished by the judgment unless otherwise specified by the mortgage contract.

■ "For example, bankruptcy courts have consistently held that the doctrine of merger under Pennsylvania law entitles a mortgagee post-judgment to the legal rate of interest rather than the rate specified in the mortgage. Because the mortgage merges into the judgment, its terms specifying the contractual interest rate no longer exist to bind the parties". *Id.* at page 1095.

Under non-bankruptcy law then, the post-judgment mortgagee is entitled to six percent (6%) interest on its obligation until such time as it is paid.

That, however, does not take into effect 11 U.S.C. § 1325(a)(5)(B), which states as follows:

### § 1325. Confirmation of plan.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(iii) the debtor surrenders the property securing such claim to such holder;

Secured creditors are entitled to the present value of their claims. "When a claim is paid off pursuant to a stream of future payments, a creditor receives the 'present value' of its claim only if the total amount of the deferred payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments". *Rake v. Wade,* — U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) at page 2192, footnote 8.

Although the Supreme Court of the United States did not express a view as to the appropriate rate of interest, the Third Circuit in *General Motors Acceptance Corporation v. Jones,* 999 F.2d 63 (3rd Cir.1993) did conclude that "The appropriate interest rate for this purpose is the rate of interest currently being charged by the creditor in the regular course of its business for loans similar in character, amount or duration to the loan being coerced in the cramdown". *Id.* at page 71.

A default judgment in mortgage foreclosure was entered against the Debtor on July 6, 1993. That judgment represented a lien on the real estate in question. No evidence was offered by either Debtor or Bank as to the appropriate rate of interest charged by the Bank in the regular course of its business for loans similar in character. Although the Debtor offered the statutory judgment rate of interest, that will not necessarily reflect the present value as contemplated by Section 1325(a)(5)(B).

In order to assist bankruptcy courts in implementing the "coerced loan approach", the court in *General Motors Acceptance Corporation v. Jones, supra,* adopted the following guideline:

"We conclude that it would be consistent with the statutory objective and would reduce litigation expenses if we imposed an additional rule of practice in this area. The contract rate of interest is, of course, the rate that the creditor voluntarily agreed to accept at an earlier date. While in some cases the passage of time will have seen a material increase or decrease in the lending rate of the creditor, the contract rate is a fair place to begin. In the absence of a stipulation regarding the creditor's current rate for a loan of similar character, amount and duration, we believe it would be appropriate for bankruptcy courts to accept a plan utilizing the contract rate if the creditor fails to come forward with persuasive evidence that its current rate is in excess of the contract rate. Conversely, utilizing the same rebuttable presumption approach, if a debtor proposes a plan with a rate less than the contract rate, it would be appropriate, in the absence of a stipulation, for a bankruptcy court to require the debtor to come forward with some evidence that the creditor's current rate is less than the contract rate." *Id.* at page 70.

Since the rate specified in the mortgage instrument between the Debtor and the Bank indicated an interest rate of ten and one-eighth percent (10⅛%) and since there was no other evidence of the Bank's contract rate as of the time of the effective date of the Plan offered, we conclude that the Chapter 13 Plan should offer a return of ten and one-eighth percent (10⅛%) interest on the secured portion of the bifurcated claim over its duration.