**In re Joel EASTWOOD and Paulette Eastwood, Debtors.**

**Bankruptcy No. 95–24195.**

United States Bankruptcy Court,
D. New Jersey.

Feb. 13, 1996.

Vincent James Sanzone, Jr., South Orange, NJ, for Debtors.

Federman And Phelan, P.C. by Scott D. Sherman, Westmont, NJ, for Metmor Financial.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

### INTRODUCTION

This matter comes before the court by way of motion of debtors, Joel and Paulette Eastwood, to bifurcate the claim of Metmor Financial, Inc. ("Metmor") into secured and unsecured components pursuant to section 506(a) of the Bankruptcy Code and to strip down[1] the lien of Metmor to the fair market value of debtors' property. Metmor opposes debtors' motion to strip down its claim on the basis that such relief would impermissibly modify Metmor's rights as the holder of a security interest solely in the debtors' principal residence, thus violating the anti-modification provisions of section 1322(b)(2) of the Bankruptcy Code.

The issues raised by this matter are core proceedings as defined by Congress in 28 U.S.C. section 157. The within opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

1. Debtors are the owners of a single family principal residence located at 277 Belleview Terrace, Hillside, New Jersey ("the property").

2. Metmor is the servicer for Government National Mortgage Corp. ("Government Na-

---

1. As was defined by the district court in *In re Hirsch*, 166 B.R. 248, 249 (E.D.Pa.1994), "the term 'lien stripping' refers to the splitting of a secured lender's lien into secured and unsecured components. The secured part equals the fair-market value of the underlying real property at the time of the splitting, and the debtor in such lien-stripped plans pays this amount to the lender in monthly installments, typically over five years. The unsecured part constitutes the remainder that the debtor owes the lender, and this portion is lumped with the rest of the debtor's unsecured obligations." By doing so, the debtor effectively reduces the mortgage to the value of the home, and, through a chapter 13 plan, continues to pay monthly mortgage payments until the stripped down secured claim has been paid in full. Weintraub and Resnick, *"A Lesson in Drafting Home Mortgages after Nobelman: When Taking More Results in Less,"* 26 UCCLJ 262 (1994).

tional"), the holder of a purchase money mortgage on the debtors' property.

3. On November 23, 1990, the Debtors and Sears National Mortgage Corporation[2] entered into a loan mortgage agreement in which the Debtors became indebted to Sears National for the sum of $125,701.00, which was secured by a mortgage on the debtors' property. (Mortgage, Exhibit A of Metmor's Brief filed September 15, 1995 in opposition to debtors' motion.)

4. Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 2, 1995.[3]

5. On or about July 24, 1995, Metmor filed a proof of claim evidencing arrearages in the amount of $38,473.67 along with a statement of amount due evidencing the total indebtedness to Metmor through the date of the debtors' bankruptcy filing as $145,525.64. (Debtors' Brief at pages 1–2; Proof of Claim, Exhibit B to Debtors' Brief.)

6. Debtors filed the within motion to strip down Metmor's lien on debtors' property to the fair market value of the property. Although there has not been a valuation hearing, the fair market value has been alleged by debtors to be $100,000. (Debtors' Petition, Summary of Schedules.)

7. Recognizing that the ability of the debtor to strip down a lien in a chapter 13 bankruptcy proceeding often depends upon the language contained in the mortgage document, at the hearing on this matter on September 25, 1995, the Court gave the parties four days to submit any quotations from the mortgage in question which they believed to be relevant. (T. 9.) Neither party has submitted such additional language; therefore, the court finds that the language of page 2 of the mortgagee's brief is a fair recitation of the mortgage provision at issue. The language quoted from the mortgage and relied upon by the parties is as follows:

2. See mortgagee listed as "Sears Mortgage Corporation" in mortgage provided as Exhibit A to Metmor's Brief filed September 15, 1995.

3. The record indicates that this is the second bankruptcy filing by the debtors. Their first case, case No. 93–2631 was dismissed on May 16, 1995.

Borrower does hereby mortgage ... to Lender the following described property located in Union County, New Jersey ... together with all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property.

(Metmor's Brief at page 2.)

## DISCUSSION

■ The specific issue presented in this case is whether the so called "boilerplate" language included in the Eastwood mortgage, which language provides the mortgagee with a security interest in "improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property" removes the mortgagee's claim from the protection of § 1322(b)(2) of the Bankruptcy Code.

■ Upon a thorough examination of the case law in this area, including the Third Circuit decisions of *In re Johns*, 37 F.3d 1021 (3rd Cir.1994); *In re Hammond*, 27 F.3d 52 (3rd Cir.1994); *Sapos v. Provident Inst. of Sav. in Town of Boston*, 967 F.2d 918 (3rd Cir.1992); and *Wilson v. Commonwealth Mortg. Corp.* 895 F.2d 123 (3rd Cir.1990), this court holds that where, as here, boilerplate language contained within a residential home mortgage document which is the debtor's principal residence makes no attempt to reach collateral that is personalty and not realty, the mortgagee is within the protection of the anti-modification provision of § 1322(b)(2). This finding by the court is further buttressed by a reference to state law, under principles enunciated in *Butner v. United States*,[4] 440 U.S. 48, 55, 99 S.Ct. 914,

4. In *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) the Supreme Court held that in the absence of some federal interest requiring a different result, Congress has generally left the determination of property rights in the assets of a bankruptcy estate to state law.

918, 59 L.Ed.2d 136 (1979), wherein, pursuant to N.J.S.A. 46:3–16, *buildings and other things included in deeds to land,* the property held by the debtor includes substantially the same interests as found in the Metmor Mortgage. Thus, in the case at bar, the court finds that the mortgage currently held by Metmor is not subject to strip down to the fair market value of the property, pursuant to section 506(a) of the Bankruptcy Code, and may not be bifurcated into secured and unsecured components by the debtors' Chapter 13 plan.

■ It is the further holding of this court that based upon principles of *stare decisis,* as respects the decisions reached in *Johns,* 37 F.3d 1021; *Hammond,* 27 F.3d 52; *Sapos,* 967 F.2d 918; and *Wilson,* 895 F.2d 123, that where in the language of the mortgage document itself a security interest is taken in additional collateral such as personalty, the mortgagee's lien may be subject to strip down pursuant to section 506(a) of the Bankruptcy Code and may accordingly be bifurcated into secured and unsecured components under the debtor's chapter 13 plan. The court further finds, however, that as applied to the facts of the case *sub judice,* the decisions reached in *Johns, Hammond, Sapos,* and *Wilson* are clearly distinguishable from the instant case, insofar as in each of the above referenced Third Circuit decisions, the respective mortgages in question went beyond the confines of granting a security interest in the debtors' fee simple estate[5] to include an express security interest in personalty.

### ANALYSIS

#### Third Circuit Law

The analysis which must be employed here concerns the delicate balance which must be struck regarding the interpretation and application of two provisions of the Bankruptcy Code: 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2). Section 506(a) defines allowed[6] secured and unsecured claims as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

■ As has been recognized by the Third Circuit, "section 506(a) limits a creditor's secured claim to the value of its collateral." *In re Hammond,* 27 F.3d at 55 (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240 & n. 3, 109 S.Ct. 1026, 1029 & n. 3, 103 L.Ed.2d 290 (1989)); *see also, Sapos v. Provident Inst. of Sav. in Town of Boston,* 967 F.2d at 921 (indicating that section 506(a) permits the debtor to "cram down" an undersecured claim to reflect the present value of the collateral).

Section 1322(b)(2) of the Bankruptcy Code, known as the "anti-modification" provision, allows a Chapter 13 debtor to modify the rights of holders of secured and unsecured claims, except claims wholly secured by real estate mortgages. (S.Rept. No. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) p. 141 U.S.Code Cong. & Admin.News 1974 pp. 5787, 5927.) In *Hammond,* 27 F.3d at 57, it was recognized that the underlying

---

5. With respect to the language provided in the Eastwood mortgage, the court notes that an estate in fee simple absolute carries with it "the largest possible aggregate of rights, privileges, powers and immunities with respect to the land in which it exists, and thus comprises full ownership of that land." Cunningham, Stoebuck, Whitman, *The Law of Property, Second Edition* (West Publishing Company 1993).

6. Pursuant to section 502(a) of the Bankruptcy Code, a claim or interest, proof of which is filed under section 501 of the Bankruptcy Code, is deemed allowed unless a party in interest objects.

rationale for section 1322(b)(2) was Congress's intent to protect the lenders of residential mortgages in return for the valuable economic and social service they perform when they make such funds available. The legislative history underlying § 1322(b)(2) indicates that the statute was designed to protect and promote "the increased production of homes and to encourage private individual ownership of homes as a traditional and important value in American life." *In re Davis,* 989 F.2d 208, 209 (6th Cir.1993) (citing *In re Glenn,* 760 F.2d 1428, 1434 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985)). Section 1322(b)(2) provides:

> Subject to subsections (a) and (c) of this section, the plan may-
>
> .  .  .  .  .
>
> (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(Emphasis added.)

The Third Circuit has reviewed in detail the interplay between sections 506(a) and 1322(b)(2) of the Bankruptcy Code. In *Wilson v. Commonwealth Mortg. Corp.,* 895 F.2d at 128, the Court held that section 1322(b)(2) does not preclude modification of the unsecured portion of an undersecured mortgage debt. Significantly, for the court's purposes here, an alternative basis for the court's decision in *Wilson* was its further holding that in that case the anti-modification provision of section 1322(b)(2) did not bar the debtor's rights to bifurcate the claim in that case because the creditor's interest was not secured only by real property as required by the statute. 895 F.2d at 128. In *Wilson,* the court stated, "By its express terms, section 1322 prohibits modification of a creditor's rights *only when* the creditor's claim is 'secured only by a security interest in real property that is the debtor's principal residence.'" *Id.* (emphasis added). Since the

mortgage agreement in question in *Wilson* stated that the mortgagee had a security interest in appliances, machinery, furniture and equipment, the bankruptcy court reasoned, and the district court and the Third Circuit agreed, that section 1322(b)(2) was therefore inapplicable.[7] *See also, In re Hammond,* 27 F.3d at 55 (interpreting the Court's holding in *Wilson* ).

Similarly, again in 1992, the Third Circuit recognized in *Sapos,* 967 F.2d at 925, that "when a creditor takes a security interest in personalty . . . in addition to realty, the creditor puts the claim outside the anti-modification provision of section 1322(b)(2)." In *Sapos* the lien in question was secured in part by wall-to wall carpeting, rents and profits. 967 F.2d at 925. The Court held that the teachings of *Wilson* applied to bar the mortgagee's reliance upon the anti-modification provision of section 1322(b)(2). *Id.* In so holding the *Sapos* court stated:

> Banks and mortgage companies provide the printed forms for mortgagors. Notwithstanding the precise language of the statute, the forms in *Wilson* and in the case before us attempt to reach collateral that is personalty and not realty. At oral argument, counsel for the debtor placed the issue in proper perspective:
>
> > COUNSEL: [the banks have] chosen to put themselves out of the requirement of the *Wilson* court. Banks now know that issue is there. They have not changed their forms any. If they want to try and get every last piece of collateral and fall within the control of the *Wilson* court, I think then [they may not seek the protection of section 1322(b)(2) anti-modification provision.].

*Sapos,* 967 F.2d at 925–26.

Significantly, in 1993, the United States Supreme Court in the decision of *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) definitively ruled on the above issue and held that the bifurcation of a home mortgage into secured and unsecured portions, and modification of

---

7.  The *Wilson* court elaborated on its reasoning stating that the mortgage which "included furniture, equipment, machinery and appliances in its description of collateral clearly creates a security interest in that personal property." 895 F.2d at 129.

the unsecured deficiency claim, (as had been allowed in *Wilson*,[8] and *Sapos*), is not permitted in a chapter 13 case with respect to a mortgage on only the debtor's principal residence.

In interpreting the Supreme Court's holding in *Nobelman*, the Third Circuit in the 1994 decision of *In re Hammond*, 27 F.3d 52, held that *Nobelman* overruled only one of the two rationales underlying the Third Circuit's decisions in *Wilson* and *Sapos*. The *Hammond* Court noted "*Nobelman* did expressly overrule the holding in *Wilson* and *Sapos* that section 1322(b)(2) does not preclude a debtor from modifying the undersecured portion of a mortgage." 27 F.3d at 56 (citing *Nobelman*, 508 U.S. at 326–28, 330–32, 113 S.Ct. at 2109, 2111). The *Hammond* court quoted the Supreme Court in *Nobelman* as stating: "Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence." 27 F.3d at 56 (citing *Nobelman*, at 332, 113 S.Ct. at 2111). The Third Circuit in *Hammond* went on to state, however, that the Supreme Court's opinion in *Nobelman* did not expressly address the alternate rationale for the Third Circuit's decisions in *Wilson* and *Sapos*. That is, the finding that a mortgagee who takes an additional security interest in property other than the real estate which is the mortgagors' primary residence cannot claim any benefit from the anti-modification provision of section 1322(b)(2), and therefore such a mortgagee's claim can be bifurcated under section 506(a). 27 F.3d at 56; *see also In re Bernhardt*, 186 B.R. 889, 890 (Bankr.E.D.Pa. 1995) (specifically holding that as noted in *Johns*, 37 F.3d 1021 and *Hammond*, 27 F.3d 52, *Sapos* survives *Nobelman* on this issue of additional collateral); Judge Wizmur's recent decision in *In The Matter of Arvelo*, 176 B.R. 349, 357 (Bankr.D.N.J.1995) (stating "the Supreme Court's decision in *Nobelman* only overruled one aspect of the Third Circuit's decisions in *Wilson* and *Sapos;* thus these

cases still have qualified precedential value."); *accord In re Gelletich*, 167 B.R. 370, 375 (Bankr.E.D.Pa.1994) and *In re Hirsch*, 166 B.R. 248 (E.D.Pa.1994).[9]

In rejecting the mortgagee's argument that the additional security interest provided for in its mortgage was "meaningless standard language" that gave it "no additional security as a practical matter", the Third Circuit in *Hammond* recalled its holding in *Wilson* regarding the same argument by the mortgagee in that case. 27 F.3d at 56–57. In repeating the often cited language of the bankruptcy judge, the district court in *Wilson* stated: "[t]he language of section 1322(b)(2) is unambiguous. If [the creditor] wishes otherwise, it should delete such language from its agreements." *See In re Hammond*, 27 F.3d at 57 (quoting *Wilson*, 895 F.2d at 129.); *see also In re Tallo*, 168 B.R. 573, 574 (Bankr.M.D.Pa.1994) (citing the *Hammond* court adopting the language of the lower court with respect to the bank's argument regarding additional collateral, that is, "their recourse, if they wish to avoid modification, is to forgo the additional security").

### Split of Authority

■ Based upon the foregoing, it is well settled that subsequent to the Supreme Court's decision in *Nobelman*, a chapter 13 debtor is prohibited from relying on section 506(a) to "strip down" a lien to the value of the mortgaged premises that is the debtor's principal residence. That is, § 1322(b)(2) of the Bankruptcy Code provides that a chapter 13 plan may not modify a claim that is secured only by a security interest in real property that is the debtor's principal residence. *In re Alfred R. French*, 174 B.R. 1 (Bankr.D.Mass.1994); *In the Matter of Pruett*, 178 B.R. 7 (Bankr.N.D.Ala.1995). The more ambiguous question, and the one the court must address in the case *sub judi-*

---

8. Parenthetically, the court notes that in *Nobelman* the only reference the Supreme Court makes to *Wilson* is in footnote 2 of *Nobelman* where the Supreme Court states that "Four Circuits have held that § 1322(b)(2) allows bifurcation of under-secured homestead mortgages." 508 U.S. at 327 fn. 2, 113 S.Ct. at 2109 fn. 2.

9. The Bankruptcy Court's decision has been cited as *In re Hirsch*, 155 B.R. 688 (Bankr.E.D.Pa. 1993).

*ce*, is exactly *when*, in light of the language contained within a mortgage document, a claim can be considered secured "only by an interest in real property that is the debtor's principal residence." *In re French*, 174 B.R. at 4.[10]

Post *Nobelman*, this court finds a virtual irreconcilable split of authority on this issue.[11] Bankruptcy as well as district courts all over the country, but specifically those within this circuit,[12] have struggled to determine whether the attempted inclusion of an asset is sufficient to deny a lender the protection of the anti-modification provisions of § 1322(b)(2). In addressing the issue, this Court is called upon to question whether the language contained in the subject Eastwood mortgage document is mere surplusage or whether the terms somehow increase the right of the mortgagee beyond a mere interest in real estate. *In re Lutz*, 164 B.R. 239, 242 (Bankr.W.D.Pa.1994).[13]

Upon a detailed review of the current case law, some courts have adopted an expansive reading of *Nobelman*, indicating that so called "boilerplate interests" constitute an "acknowledgement that such interests are merely incidental to the real property interest being protected"; *In re French*, 174 B.R.

at 4. These courts have therefore concluded that the inclusion of additional collateral *does not* affect the anti-modification provision of § 1322(b)(2) and such courts preclude a strip-down of the mortgagee's interest in those cases. *See*, for example, *In re French*, 174 B.R. 1 (boilerplate language of residential mortgage, which language provided mortgagee with a security interest in appurtenances, does not remove claim from the protection of § 1322(b)(2)); *In re Halperin*, 170 B.R. 500 (Bankr.D.Conn.1994) (residential mortgagees interests which included a security interest in rents, royalties, oil and gas rights, profits, stock and fixtures did not remove the mortgage from the protection of § 1322(b)(2)); *In re Harris*, 167 B.R. 813 (Bankr.D.S.C.1994) (residential mortgage which included a security interest in rents and fixtures did not remove mortgagee's interest from the ambit of § 1322(b)(2)); *In re Lutz*, 164 B.R. 239 (Bankr.W.D.Pa.1994) (residential mortgage where bank had security interest in rents issues and profits precluded debtor from stripping down mortgagee's lien); *In re Spano*, 161 B.R. 880 (Bankr.D.Conn.1993) (mortgagee's interest in rents, fixtures and hazard insurance proceeds did not remove mortgagee from § 1322(b)(2)'s protection against modification); *In re Ogles-*

---

**10.** Significantly, in *Hirsch*, 166 B.R. at 252 the court indicated that the mortgagee in *Nobelman*, American Savings Bank, had a claim on the Nobelman's condominium, and the Nobelman's deed of trust to the Bank provided for an additional security interest in:

> .67 percent interest in the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, *together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents … royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property*, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust.

(Emphasis added.)

The issue of this "additional security" was not decided by the Supreme Court in *Nobelman*. *In re French*, 174 B.R. at 4; *see also In re Hammond*, 27 F.3d at 57 (where the Third Circuit expressly found that):

> The Supreme Court's failure to address the effect of the additional security interest in the *Nobelman* mortgage does not imply that the Supreme Court held that section 1322(b)(2)

prohibits bifurcation of residential mortgages that also give the mortgagee a lien on personal property used in or about the residence.

**11.** *See In re French*, 174 B.R. at 4, indicating that the " 'boilerplate' case law is hopelessly irreconcilable because Congress did not contemplate that the intensely technological language of mortgage instruments would be tested against the simple but precise language of § 1322(b)(2)."

**12.** It is interesting to note that during the course of this analysis, this court reviewed no less than 20 cases dealing with the issue of additional collateral and the anti-modification provision of section 1322(b)(2). Of those 20 cases, 15 were from the bankruptcy courts of the Eastern, Western and Middle Districts of Pennsylvania.

**13.** In posing such a question, this court is aware of the dicta of at least one court which read the Third Circuit decision in *Hammond* and the district court decision in *Hutchins v. Commonwealth Mortgage Corp.*, 165 B.R. 401 (E.D.Pa. 1994) as looking "only to the language on the face of the subject mortgages to determine that there was a security interest in addition to the real property." *Hirsch*, 166 B.R. at 255.

*by,* 161 B.R. 917 (Bankr.E.D.Pa.1993) (holding that a security interest "in the oven, dishwasher, and fan vent in the residence, as well as rents, issues and profits therefrom" was sufficient to take the mortgage outside the scope of § 1322(b)(2)); *see also, In re French,* 174 B.R. at 5 and cases cited therein.

Under this line of cases, perhaps the widest grant of protection afforded a mortgagee pursuant to § 1322(b)(2) is Judge Dalzell's opinion in the District Court of Pennsylvania's decision of *In re Hirsch,* 166 B.R. 248 (E.D.Pa.1994). In *Hirsch,* like the case *sub judice,* the Hirsch mortgage was secured in part by the house "together with all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property." 166 B.R. at 249. Moreover, the mortgage of a second debtor, Cheryl Kane, whose appeal was consolidated with that of Steven Hirsch, did contain terms which suggested that there might be a security interest in items other than the real property.[14] In *Hirsch,* with respect to the Steven Hirsch mortgage, Judge Dalzell relied heavily on the Supreme Court's finding in *Nobelman* and surmised that because the language was in all material respects identical, the Hirsch mortgage, like the Nobelman's deed of trust, fell within the scope of § 1322(b)(2). 166 B.R. at 253. Moreover, in finding that even the Kane record was devoid of anything to suggest "that this was not a garden-variety *Nobelman* home mortgage case, or that the mortgagee *actually* received a security interest in anything other than the real property involved," the district court disagreed with the bankruptcy judge and [15] distinguished its

holding in *Hirsch* from that in *Wilson* by indicating that, in *Wilson,* the court found "independent value" in the items that were pledged as additional collateral. 166 B.R. at 255.

In further discussing the split of authority in this area, the court finds that the district court's opinion in *Hirsch* notwithstanding, other courts, most notably those within the Third Circuit, have narrowly construed the Supreme Court's prohibition on lien stripping as outlined in *Nobelman,* by concluding that Congress intended to strictly limit the protection of claims under the protection of § 1322(b)(2). *In re French,* 174 B.R. at 4–5. *See,* for example, *In re Johns,* 37 F.3d 1021 (chapter 13 debtor could modify rights of undersecured mortgage lender when mortgage was secured by both real and personal property, including any and all appliances, machinery, furniture and equipment of any nature whatsoever installed in or upon the premises); *In re Hammond,* 27 F.3d 52 (mortgage that created a security interest in any and all appliances, machinery, furniture and equipment (whether fixtures or not) in addition to lien on debtor's principal residence could be bifurcated into secured and unsecured components); *Sapos v. Provident Inst. of Sav. in Town of Boston,* 967 F.2d 918 (chapter 13 debtor allowed to strip-down mortgage lien where mortgagee's claim was not only secured by security interest in real property but also wall to wall carpeting, rents, profits and appliances).

Many other bankruptcy courts have ruled in accord with the above Third Circuit cases, permitting lien stripping, where there was an "independent interest" granted by the mortgage in some form of personalty. *See In re Bernhardt,* 186 B.R. at 889, 890 (Bankr.

---

14. In *Hirsch,* the Kane debtor's mortgage granted a security interest in the house:

together with all and singular the Buildings and Improvements on said premises, as well as all alterations, additions or improvements now or hereafter made to said premises, and any and all appliances, machinery, furniture and equipment (whether fixtures or not) or any nature whatsoever now or hereafter installed in or upon said premises, Streets, Alleys Passages, Ways, Waters, Water Courses, rights, Liberties, Privileges, Hereditaments and Appurtenances whatsoever thereunto belonging

or in any wise appertaining and the Reversions and Remainders, Rents, Issues and Profits thereof.

15. As distinguished from the approach taken by this court, Judge Dalzell's finding in *Hirsch* with respect to the Kane debtor, that is, that the mortgagee had in fact not received a security interest in anything other than real property, looks beyond the language on the face of the mortgage document itself and is yet another reason why this decision casts the net of § 1322(b)(2) so wide.

E.D.Pa.1995) (where the court indicated that with respect to a mortgage that granted a security interest in debtor's range/oven, rents issues and profits, "the principles of *stare decisis* command that we follow *Johns, Hammond,* and *Sapos* unless and until the Supreme court directs to the contrary"); *In re Haraschak,* 169 B.R. 325 (Bankr.M.D.Pa. 1994) (under principles of *stare decisis,* the court was bound to conclude that a mortgage secured in addition to debtor's principal residence, by all improvements, fixtures, appliances, and equipment was excluded from protection under § 1322(b)(2)); [16] and *Hutchins v. Commonwealth Mortgage Corp.,* 165 B.R. 401 (E.D.Pa.1994) (holding that a chapter 13 plan could properly bifurcate mortgagee's claim where the claim was secured in addition to the realty, by all appliances, machinery, furniture and equipment installed on the premises).

### Application of Analysis

Upon review, keeping in mind the narrow construction afforded the *Nobelman* analysis by the Third Circuit in *Hammond* and *Johns* aforecited, as applied to the facts of the case *sub judice,* it is critical to note that this court specifically finds that nothing in the within opinion as respects the language of the Eastwood mortgage, contradicts the Third Circuit's holdings in *Wilson, Sapos, Hammond* and *Johns.* To the contrary, in each of the above referenced cases, the language included within the respective mortgages went beyond granting a security interest in the fee simple itself to expressly include a security interest in personalty. *See Wilson,* 895 F.2d 123 (involving a security interest in "furniture, equipment, machinery and appliances" in its description of collateral); *Sapos,* 967 F.2d 918 (involving in part, an interest in "wall to wall carpeting"); *Hammond,* 27 F.3d 52 (mortgage included a security interest in "any and all appliances, machinery, furniture and equipment" (whether fixtures or not)); and *Johns,* 37 F.3d 1021 (involving a security interest in "any and all appliances, machinery, furniture and equipment").

Further, in applying its analysis to the facts of the Eastwood mortgage, the court finds the sixth circuit case of *In re Davis,* 989 F.2d 208, 211 (6th Cir.1993) analogous. In *Davis,* the court was called upon to determine whether a bank's interest in *inter alia* "rents, royalties, profits, and fixtures" were mere terms of surplusage or whether the terms somehow increased the rights of the bank beyond a mere interest in the real estate of the debtor. In finding that the above phrase referred to benefits which are merely incidental to an interest in real property and did not constitute additional security for purposes of § 1322(b)(2), the *Davis* court gave support to the argument that Metmor's counsel makes in the case *sub judice,* that is, that rents and profits are automatically included in the mortgage itself by its mere execution.[17] The presumption is that the language is of mere surplusage; it is not necessary to be repeated in the body of the mortgage.

In *Davis,* Senior Circuit Judge, John W. Peck stated:

> the clear weight of authority supports a finding that the addition of a boilerplate phrase "rents, royalties, profits, and fixtures" to a mortgage or deed of trust will not generally remove the claim from the—protection of § 1322(b)(2).

989 F.2d at 211.

The court finds merit in this argument as one being grounded in logic. The mortgagee bank in the matter before the court, in taking a mortgage on the debtor's:

> improvements, now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property

the mortgagee's claim from protection against modification under § 1322(b)(2) and allowed stripdown of a second mortgage.

---

**16.** In citing Bankruptcy Judge Thomas' recent decision in *Haraschak,* 169 B.R. 325, decided June 29, 1994, the court is aware of Judge Thomas' decision in *In re Tallo,* 168 B.R. 573, decided one day earlier, June 28, 1994 wherein the bankruptcy court held that the mortgagee's additional interest in "rents, issues, and profits" removed

**17.** See Counsel for Metmor's argument at Point IV.

is simply describing the fee simple absolute with all its appurtenant hereditaments as defined under common law and as codified in N.J.S.A. 46:3–16,[18] and thus seeks no more than a lien on the fee in language used in "boilerplate mortgages" throughout New Jersey. To hold that this type of mortgage clause constitutes "additional collateral" of "independent value" would completely eviscerate the protective exception for residential lenders found in § 1322(b)(2). See *Davis*, 989 F.2d at 210 (citing a similar rationale with respect to a provision requiring the borrower to acquire and maintain insurance coverage to protect against fire and other casualty losses); *see also In re Halperin*, 170 B.R. 500 (residential mortgage which extends to rents, royalties, oil and gas rights and profits, stock and fixtures, does not create additional collateral for the claim distinct from that normally considered incidental to ownership of realty within the contemplation of § 1322(b)(2)).

### Application of State Law

To complete our analysis of the issue of the interplay between anti-modification and strip down in the context of a chapter 13 case, we will note briefly the argument raised by Metmor's counsel regarding the effect of the application of state law in determining whether or not a secured lender holds collateral in addition to the real property.[19] (Metmor's Brief at Point IV.)

■ Initially, it must be noted that as indicated earlier herein, in the absence of a federal rule regarding the definition of "real property," as used in § 1322(b)(2), this court will turn to the law of the state of New Jersey to determine what rights are included in the term. *Butner*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

**18.** As respects N.J.S.A. 46:3–16, see footnote 17 of the within opinion.

**19.** Metmor cites to N.J.S.A. 46:3–16 *Buildings and Other Things Included in Deed to Land*, with regard to the cited statute, Counsel argues that the language found in the Eastwood Mortgage does not give Metmor a security interest in anything other than what it would already have simply by having a security interest in the real property. The Statute provides:

■ While counsel is correct in stating that this argument has never been addressed by the Third Circuit in *Hammond, Sapos,* or *Wilson,* upon it's own independent inquiry, this court finds that the question of the effect of applicable state law in the context of a § 1322(b)(2) discussion has been treated at length by other bankruptcy courts. As Judge Boroff stated in relevant part in *French:*

> This Court is not inclined to *confine* its holding by reliance or definition of real property under applicable state law. Whether a mortgage enjoys a perfected security interest in an asset is an issue which should be determined pursuant to state law. However, whether the attempted inclusion of that asset in a mortgage instrument is sufficient to deny a lender the protection of the anti-modification provision of § 1322(b)(2) is an issue of federal bankruptcy law.

174 B.R. at 7 (emphasis added).

While this court finds that, as indicated in *French,* it is not bound by state law in its interpretation and application of the anti-modification provision codified by § 1322(b)(2), a reference to state law is mandated under *Butner,* 440 U.S. 48, 99 S.Ct. 914 at least as respects the definition of what is considered real property, as that term has not been defined for purposes of § 1322(b)(2). See *In re Lutz,* 164 B.R. 239 (where the court applied Pennsylvania law to determine whether "improvements and fixtures," "additions or improvements," and "rents, issues and profits," as stated in a residential home mortgage constituted something other than a security interest in real estate which was the debtor's principal residence. In *Lutz,* the court found that interest in these "incidentals" did not constitute additional security for purposes of § 1322(b)(2),

> Every deed conveying lands shall, unless an exception shall be made therein, be construed to include all and singular the building, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances to the same belonging or in anywise appertaining; and the reversion and reversions, remainder and remainders, rents issues and profits thereof, and of every part and parcel thereof.

and therefore prohibited strip down), and *In re Spano*, 161 B.R. 880 (Bankr.D.Conn.1993) (where the court looked to the state law of Connecticut and determined that a security interest contained in a mortgage did not eliminate it from protection from modification under § 1322(b)(2)).

Upon review of the New Jersey statute cited by counsel for Metmor, as respects deeds conveying land and what such deeds shall be construed to include, this court accepts counsel's argument in further support of the proper application of the anti-modification protection afforded pursuant to 11 U.S.C. § 1322(b)(2) as applied to the facts herein. That is, in the words of counsel, "even if the clause which debtor relies on was not contained in the mortgage agreement, Metmor would still have a security interest in all of the items covered in that clause. As long as Metmor has a security interest in the real property, absent any exception, Metmor would also have a security interest, via N.J.S.A. 46:3–16, in all items which naturally run with the land." (Metmor's Brief at Point IV).[20] Thus, this court holds that the boilerplate language in the mortgage which provides for a security interest in *inter alia*, "rents and fixtures", does not in any way give Metmor additional collateral.[21]

## CONCLUSION

We ultimately rule therefore, that based upon the law as has been established by this circuit and for the reasons as aforestated, the mortgage currently held by Metmor is entitled to the anti modification protection afforded it pursuant to section § 1322(b)(2) of the Bankruptcy code. The court hereby denies Debtors' motion to strip down the lien of Metmor to the fair market value of the debtors' property. Debtors shall pay the entire balance of the mortgage under their Chapter 13 Plan.

20. As respects the specific term "rents" as used in the Eastwood mortgage and the parties' respective interests thereto, this court in its comprehensive review has considered the recent Third Circuit case, *In re Jason Realty*, 59 F.3d 423 (3rd Cir.1995) which addressed the issue of whether an assignment of rents should have been classified as property of the estate under 11 U.S.C. § 541(a)(1). In holding that an assignment agreement, evidenced absolute assignment of title to rents, with the debtor receiving license to collect rents, and thus, rents were not estate property, Judge Aldisert, emphasized that "rents are interests in real property and as such, are created and defined in accordance with the law of the situs of the real property." 59 F.3d at 426. Upon review, this court finds nothing in the within opinion which contradicts the Third Circuit's holding in *Jason*. In *Jason*, the court specifically found that an assignment clause within a mortgage may be independent of the mortgage security. 59 F.3d at 427. Moreover, the mortgagee bank in *Jason*, proceeded as an *assignee of rents* under rights conferred under a special lease instrument bearing the title "Assignment of Lease or Lease" and not in its capacity as a mortgagee enforcing rights contained in the instrument bearing the title mortgage. In the instant case, the court finds that mere use of the term rents without an assignment of rents, only describes the debtors' interest in the real property and does not in any way operate to deprive the bank from the protection afforded it under 11 U.S.C. § 1322(b)(2).

21. Finally, counsel for both parties cite to this court's prior ruling in the unpublished decision of *In re Gonzalez*, Case No. 94–26872 (unpublished slip opinion, Bankr.D.N.J. May 24, 1995) where we held that because the mortgagee took an additional security interest in the debtor's personalty, it could not avail itself of the protections normally afforded residential mortgages under § 1322(b)(2). Upon review, we find our ruling today consistent with our ruling in *Gonzalez*. In *Gonzalez*, the language of the Mortgage provided a security interest identical to the one in the case at bar. The security interest granted in *Gonzalez* went beyond the confines of this case however, by providing a "Family Rider" to the mortgage, specifically dealing with the assignment of rents in the context of a one family to four family rental unit, thus putting it clearly beyond the scope of anti-modification under § 1322(b)(2). This court nevertheless held in that case that the Third Circuit decisions relied upon here, that is *Wilson, Sapos*, and *Hammond* were controlling. *Gonzalez*, Case No. 94–26872 at page 7.