**In re Robert A. ANDERSON and Frances C. Anderson, Debtors.**

**Bankruptcy No. 5–95–01128.**

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

April 14, 1997.

John DiBernardino, Lehighton, PA, for Debtors.

Terrance McCabe, Philadelphia, PA, for Household Realty Corp.

Charles DeHart, III, Hummelstown, PA, Chapter 13 Trustee.

### *OPINION AND ORDER*

JOHN J. THOMAS, Bankruptcy Judge.

I have been asked to revisit an issue previously decided by this court in *In re Tallo,* 168 B.R. 573 (Bankr.M.D.Pa.1994). That case held a mortgagee's security interest in "rents, issues, and profits," as described in its mortgage, was sufficient to constitute additional collateral besides the real property so as to remove the mortgage from the anti-modification provisions of 11 U.S.C. § 1322(b)(2).

In the case before me, the chapter 13 Debtors have proffered a plan attempting to "strip down" the lien of a second mortgagee, Household Realty Corporation, under 11 U.S.C. § 506.

Household Realty, the objector to the plan, argues that its mortgage is not subject to modification under 11 U.S.C. § 1322(b)(2), the antimodification clause, which reads as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

Household maintains that its mortgage contains no language which would remove it from the umbrella of § 1322(b)(2). The Debtors argue otherwise.

Pointing to provisions of the Household mortgage, the Debtors suggest that the scope of the collateral extends beyond the mere real property representing the residence. That language reads as follows:

All that certain property situated in Mt. Pocono Boro in the County of Monroe ... together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage and all of the foregoing,

together with said property (or the leasehold estate of if this Mortgage is on a leasehold) are hereinafter referred to as "Property."

In *Tallo,* I relied on similar language in the mortgage instrument to conclude that the mortgage encumbered more than the "real property that is the debtor's principal residence" and thus, was modifiable under a literal reading of § 1322(b)(2).

A series of recent cases has caused me to review this position in light of their observations. *In re Wilkinson,* 189 B.R. 327 (Bankr. E.D.Pa.1995) (addressing "rents, issues and profits"); *In re Brown,* 189 B.R. 3 (Bankr. E.D.Pa.1995) (addressing unaccrued rents); and *In re Crystian,* 197 B.R. 803 (Bankr. W.D.Pa.1996). *See also In re Eastwood,* 192 B.R. 96 (Bankr.D.N.J.1996). These cases rely on the well-respected proposition that "[p]roperty interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *Wilkinson* and its progeny argue that since Pennsylvania law includes unaccrued "rents" among the bundle of rights contained within a conveyance of real property (21 P.S. § 3, *Commerce Bank v. Mountain View Village,* 5 F.3d 34, 39 (3d Cir. 1993)), the inclusion in the mortgage of a provision identifying the rents together with the description of the realty conveys no more than real property itself. That provision, therefore, does not nullify the "antimodification" provision of § 1322(b)(2).

■ A mortgage need not include a conveyance of rents to grant to the mortgagee a security interest in rents accruing under a lease entered into prior to the mortgage. *Peoples–Pittsburgh Trust Co. v. Henshaw,* 141 Pa.Super. 585, 588, 15 A.2d 711 (1940). However, in the absence of a clause in the mortgage expressly assigning the rents, the lien of the mortgage will not encumber the rents payable by reason of a lease entered into *after* the date of the mortgage document. *Fogarty v. Shamokin & Mt. Carmel Transit Co.,* 367 Pa. 447, 449, 80 A.2d 727, 728 (1951). Should such a provision be present in the mortgage, the answer would be different. "When such a clause is included, it operates as an assignment to the mortgagee of future

rents issuing out of the property, which assignment becomes effective however only when, upon default, the mortgagee notifies the tenant of the default and his (the mortgagee's) demand." *Id.*

■ Regardless of whether a rent assignment clause is included in the mortgage, it is hornbook law that "[r]ent which is not yet due is real property." Chester H. Smith, *Survey of the Law of Real Property* 335 (1956).

Property interests in bankruptcy are created and defined by state law. This is a proposition firmly entrenched in our body of case law. It rests on the sound principle that "[u]niform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' " *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), *citing Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961).

I conclude, therefore, that a literal interpretation of § 1322(b)(2) would prevent a modification of the Household mortgage since its claim is "secured only by a security interest in real property that is the debtor's residence."

There is an additional reason that would favor this interpretation of § 1322(b)(2). As pointed out by Justice Stevens in his concurring opinion in *Nobelman,* a "literal reading of the text of the statute is faithful to the intent of Congress" seeking to treat favorably residential mortgagees so as "to encourage the flow of capital into the home lending market." *Nobelman v. American Savings Bank,* 508 U.S. 324, 332, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993).

Notwithstanding that dicta, however, if such a conclusion conflicts with Third Circuit authority, the principle of stare decisis would compel a different result. *In re Taffi,* 144 B.R. 105, 108 (Bankr.C.D.Ca.1992).

The circuit has been active in this area, having discussed the interrelationship of

§ 1322(b)(2) and what is commonly referred to as the "appurtenance clause," on no less than four occasions. *In re Johns,* 37 F.3d 1021 (3rd Cir.1994); *In re Hammond,* 27 F.3d 52 (3rd Cir.1994); *Sapos v. Provident Inst. of Sav. in Town of Boston,* 967 F.2d 918 (3rd Cir.1992); and *Wilson v. Commonwealth Mortg. Corp.* 895 F.2d 123 (3rd Cir. 1990).

An examination of each of these cases suggests that they are distinguishable from the case before us in that they appeared to include in their respective mortgages, items generally classified as personalty in addition to securing "rents." *In accord, In re Eastwood,* 192 B.R. 96 (Bankr.D.N.J.1996). *Johns, Hammond* and *Wilson* concern mortgages which created security interests in "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises...." *Johns v. Rousseau Mortgage Corp. (In re Johns),* 37 F.3d 1021, 1023 (3rd Cir.1994); *In re Hammond,* 27 F.3d 52, 54 (3rd Cir.1994); and *Wilson v. Commonwealth Mortg. Corp.,* 895 F.2d 123, 128 (3rd Cir.1990). The *Sapos* case included appliances in the collateral description. *Sapos v. Provident Inst. of Sav. In Town of Boston,* 967 F.2d 918, 925 (3rd Cir.1992).

Furthermore, in each of these circuit cases, the appurtenance clause went beyond describing mere "fixtures," which are real property. Chester H. Smith, *Survey of the Law of Real Property* 346 (1956).

In 1933 the Supreme Court of Pennsylvania in the case of *Clayton v. Leinhard* [*Lienhard* ], 312 Pa. 433, 167 A. 321 [(1933) ], attempted to classify chattels that are used in connection with real property. Three classifications were established: (1) Those which are manifestly furniture, as distinguished from improvements, and which are not particularly fitted to the property with which they are used; these always remain personalty. (2) Those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even when the express intention is that they should be considered personalty. (3) Those which, though physically connected with real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves or the property to which they are annexed; these become part of the realty or remain personalty depending upon the intention of the parties at the time of annexation. In this class fall such chattels as boilers and machinery for the use of an owner or tenant, but readily removable. *In re Kann,* 6 UCC Rep. Serv. 622, 1969 WL 11069 (Bankr.E.D.Pa. 1969).

As best as can be determined by a review of *Johns, Hammond, Wilson,* and *Sapos,* the mortgagee attempted to reach beyond the "real property that is the debtor's principal residence" and, thus, removed itself from the protection of § 1322(b)(2).

Notwithstanding this discussion, the circuit may be free to disregard a state law interpretation of real property in favor of adopting a uniform application of that term throughout the nation. *Reconstruction Finance Corp. v. Beaver County,* 328 U.S. 204, 208, 66 S.Ct. 992, 994, 90 L.Ed. 1172 (1946) (definition of "real property" as used in a federal statute is a federal question). Nevertheless, I am not convinced that it was their intention so to do. I, therefore, conclude that my earlier decision in *In re Tallo* was in error and I hereby reverse the effect of that decision by concluding that the Household mortgage cannot be modified since it encumbers nothing but the real property that constitutes the Debtors' residence.

My Order is attached.

### ORDER

Based on the attached Opinion, the Objection of Household Realty to the Debtors' Chapter 13 Plan is sustained. The Debtors are given thirty (30) days from the date of this Order to file an amended Chapter 13 Plan.